# Exhibit A

## House Bill 87

11                                                         HB 87/AP

House Bill 87 (AS PASSED HOUSE AND SENATE)

By: Representatives Ramsey of the 72nd, Golick of the 34th, Dempsey of the 13th, Austin of the 10th, Allison of the 8th, and others

# A BILL TO BE ENTITLED
## AN ACT

1   To enact the "Illegal Immigration Reform and Enforcement Act of 2011"; to amend Article
2   3 of Chapter 10 of Title 13 of the Official Code of Georgia Annotated, relating to security
3   and immigration compliance, so as to provide penalties for the failure of a public employer
4   to utilize the federal work authorization program; to require certain private employers to
5   utilize the federal work authorization program; to provide for review by the state auditor and
6   the Department of Labor; to provide for definitions; to amend Title 16 of the Official Code
7   of Georgia Annotated, relating to crimes and offenses, so as to provide for offenses involving
8   illegal aliens; to provide for the offense of aggravated identity fraud; to provide for penalties;
9   to amend Chapter 5 of Title 17 of the Official Code of Georgia Annotated, relating to
10  searches and seizures, so as to provide for the investigation of illegal alien status; to amend
11  Title 35 of the Official Code of Georgia Annotated, relating to law enforcement officers and
12  agencies, so as to provide authority for law enforcement officers to enforce federal
13  immigration laws under certain circumstances and to provide immunity for such officers
14  subject to limitations; to provide for civil and criminal penalties; to modify provisions
15  relating to training peace officers for enforcement of immigration and custom laws; to
16  establish grant funding for local law enforcement agencies to enter into agreements with
17  federal agencies for the enforcement of immigration law; to amend Chapter 60 of Title 36
18  of the Official Code of Georgia Annotated, relating to general provisions applicable to local
19  governments, so as to require proof that private businesses are participating in the
20  employment eligibility verification system prior to the issuance of a business license or other
21  documents; to amend Title 42 of the Official Code of Georgia Annotated, relating to penal
22  institutions, so as to provide for the verification of the immigration status of foreign nationals
23  arrested and held in a county or municipal jail; to provide that local governing authorities that
24  have entered or attempted to enter into certain memorandums of agreement with the federal
25  government shall receive additional funding for confinement of state inmates; to provide for
26  a funding contingency; to amend Title 45 of the Official Code of Georgia Annotated, relating
27  to public officers and employees, so as to provide for penalties for failure of agency heads
28  to abide by certain state immigration laws; to amend Chapter 36 of Title 50 of the Official

29  Code of Georgia Annotated, relating to verification of lawful presence within the United
30  States, so as to provide for identification documents by applicants for public benefits; to
31  enact the "Secure and Verifiable Identity Document Act"; to provide penalties for the failure
32  of an agency head to verify the lawful immigration status of certain applicants for public
33  benefits; to establish the Immigration Enforcement Review Board; to establish a study on the
34  impact of immigration reform on Georgia's agricultural industry within the Department of
35  Agriculture; to provide for related matters; to provide for an effective date and applicability;
36  to repeal conflicting laws; and for other purposes.


37          BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:


38                              **SECTION 1.**
39  This Act shall be known and may be cited as the "Illegal Immigration Reform and
40  Enforcement Act of 2011."


41                              **SECTION 2.**
42  Article 3 of Chapter 10 of Title 13 of the Official Code of Georgia Annotated, relating to
43  security and immigration compliance, is amended by revising Code Section 13-10-90,
44  relating to definitions, as follows:
45      "13-10-90.
46      As used in this article, the term:
47      (1) 'Commissioner' means the Commissioner of ~~the Georgia Department of~~ Labor.
48      (2) 'Contractor' means a person or entity that enters into a contract for the physical
49      performance of services with a public employer.
50      ~~(2)~~(3) 'Federal work authorization program' means any of the electronic verification of
51      work authorization programs operated by the United States Department of Homeland
52      Security or any equivalent federal work authorization program operated by the United
53      States Department of Homeland Security to verify employment eligibility information of
54      newly hired employees, ~~pursuant to the Immigration Reform and Control Act of 1986~~
55      ~~(IRCA), D.L. 99-603~~ commonly known as E-Verify, or any replacement
56      program.
57      ~~(2.1)~~(4) 'Physical performance of services' means the building, altering, repairing,
58      improving, or demolishing of any public structure or building or other public
59      improvements of any kind to public real property within this state, including the
60      construction, reconstruction, or maintenance of all or part of a public road; or any other
61      performance of labor for a public employer within this state under a contract or other
62      bidding process.

63    (3)(5) 'Public employer' means every department, agency, or instrumentality of the state
64    or a political subdivision of the state with more than one employee.
65    (4)(6) 'Subcontractor' means a person or entity having privity of contract with a
66    contractor and includes a subcontractor, contract employee, or staffing agency, or any
67    contractor regardless of its tier.
68    (7) 'Sub-subcontractor' means a person or entity having privity of contract with a
69    subcontractor or privity of contract with another person or entity contracting with a
70    subcontractor or sub-subcontractor."

71                                    **SECTION 3.**
72    Said article is further amended by revising subsections (a) and (b) of Code Section 13-10-91,
73    relating to the verification of new employee eligibility, applicability, and rules and
74    regulations, as follows:
75    "(a) Every public employer, including, but not limited to, every municipality and county,
76    shall register and participate in the federal work authorization program to verify
77    employment eligibility of all newly hired employees. Upon federal authorization, a public
78    employer shall permanently post the employer's federally issued user identification number
79    and date of authorization, as established by the agreement for authorization, on the
80    employer's website; provided, however, that if a local public employer does not maintain
81    a website, the identification number and date of authorization shall be published annually
82    in the official legal organ for the county: then the local government shall submit such
83    information to the Carl Vinson Institute of Government of the University of Georgia to be
84    posted by the institute on the website created for local government audit and budget
85    reporting. The Carl Vinson Institute of Government of the University of Georgia shall
86    maintain the information submitted and provide instructions and submission guidelines for
87    local governments. State departments, agencies, or instrumentalities may satisfy the
88    requirement of this Code section by posting information required by this Code section on
89    one website maintained and operated by the state.
90    (b)(1) No A public employer shall not enter into a contract pursuant to this chapter for
91    the physical performance of services within this state unless the contractor registers and
92    participates in the federal work authorization program to verify information of all newly
93    hired employees or subcontractors. Before a bid for any such service is considered by a
94    public employer, the bid shall include a signed, notarized affidavit from the contractor
95    attesting to the following:
96    (A) The affiant has registered with and, is authorized to use, and uses the federal work
97    authorization program;
98    (B) The user identification number and date of authorization for the affiant; and

99      (C)  The affiant is using and will continue to use the federal work authorization

100     program throughout the contract period; and

101     (D)  The affiant will contract for the physical performance of services in satisfaction of

102     such contract only with subcontractors who present an affidavit to the contractor with

103     the same information required by subparagraphs (A), (B), and (C) of this paragraph.

104     An affidavit required by this subsection shall be considered an open public record once

105     a public employer has entered into a contract for physical performance of services;

106     provided, however, that any information protected from public disclosure by federal law

107     or by Article 4 of Chapter 18 of Title 50 shall be redacted. Affidavits shall be maintained

108     by the public employer for five years from the date of receipt.

109     (2)  A contractor shall not enter into any contract with a public employer for No

110     contractor or subcontractor who enters a contract pursuant to this chapter with a public

111     employer or a contractor of a public employer shall enter into such a contract or

112     subcontract in connection with the physical performance of services within this state

113     unless the contractor or subcontractor registers and participates in the federal work

114     authorization program to verify information of all newly hired employees.  Any

115     employee, contractor, or subcontractor of such contractor or subcontractor shall also be

116     required to satisfy the requirements of this paragraph.

117     (3) Upon contracting with a new subcontractor, a contractor or subcontractor shall, as a

118     condition of any contract or subcontract entered into pursuant to this chapter, provide a

119     public employer with notice of the identity of any and all subsequent subcontractors hired

120     or contracted by that contractor or subcontractor. Such notice shall be provided within

121     five business days of entering into a contract or agreement for hire with any

122     subcontractor. Such notice shall include an affidavit from each subsequent contractor

123     attesting to the subcontractor's name, address, user identification number, and date of

124     authorization to use the federal work authorization program.

125     (3)  A subcontractor shall not enter into any contract with a contractor unless such

126     subcontractor registers and participates in the federal work authorization program.  A

127     subcontractor shall submit, at the time of such contract, an affidavit to the contractor in

128     the same manner and with the same information required in paragraph (1) of this

129     subsection.  It shall be the duty of any subcontractor receiving an affidavit from a

130     sub-subcontractor to forward notice to the contractor of the receipt, within five business

131     days of receipt, of such affidavit.  It shall be the duty of a subcontractor receiving notice

132     of receipt of an affidavit from any sub-subcontractor that has contracted with a

133     sub-subcontractor to forward, within five business days of receipt, a copy of such notice

134     to the contractor.

135  (4) A sub-subcontractor shall not enter into any contract with a subcontractor or
136  sub-subcontractor unless such sub-subcontractor registers and participates in the federal
137  work authorization program.  A sub-subcontractor shall submit, at the time of such
138  contract, an affidavit to the subcontractor or sub-subcontractor with whom such
139  sub-subcontractor has privity of contract, in the same manner and with the same
140  information required in paragraph (1) of this subsection. It shall be the duty of any
141  sub-subcontractor to forward notice of receipt of any affidavit from a sub-subcontractor
142  to the subcontractor or sub-subcontractor with such receiving sub-subcontractor
143  has privity of contract.
144  (5)  In lieu of the affidavit required by this subsection, a contractor, subcontractor, or
145  sub-subcontractor who has no employees and does not hire or intend to hire employees
146  for purposes of satisfying or completing the terms and conditions of any part or all of the
147  original contract with the public employer shall instead provide a copy of the state issued
148  driver's license or state issued identification card of such contracting party and a copy of
149  the state issued driver's license or identification card of each independent contractor
150  utilized in the satisfaction of part or all of the original contract with a public employer.
151  A driver's license or identification card shall only be accepted in lieu of an affidavit if it
152  is issued by a state within the United States and such state verifies lawful immigration
153  status prior to issuing a driver's license or identification card.  For purposes of satisfying
154  the requirements of this subsection, copies of such driver's license or identification card
155  shall be forwarded to the public employer, contractor, subcontractor, or sub-subcontractor
156  in the same manner as an affidavit and notice of receipt of an affidavit as required by
157  paragraphs (1), (3), and (4) of this subsection.  Not later than July 1, 2011, the Attorney
158  General shall provide a list of the states that verify immigration status prior to the
159  issuance of a driver's license or identification card and that only issue licenses or
160  identification cards to persons lawfully present in the United States.  The list of verified
161  state drivers' licenses and identification cards shall be posted on the website of the State
162  Law Department and updated annually thereafter.  In the event that a contractor,
163  subcontractor, or sub-subcontractor later determines that he or she will need to hire
164  employees to satisfy or complete the physical performance of services under an
165  applicable contract, then he or she shall first be required to comply with the affidavit
166  requirements of this subsection.
167  (6)  It shall be the duty of the contractor to submit copies of all affidavits, drivers'
168  licenses, and identification cards required pursuant to this subsection to the public
169  employer within five business days of receipt.  No later than August 1, 2011, the
170  Departments of Audits and Accounts shall create and post on its website form affidavits
171  for the federal work authorization program.  The affidavits shall require fields for the

172    following information: the name of the project, the name of the contractor, subcontractor,
173    or sub-subcontractor, the name of the public employer, and the employment eligibility
174    information required pursuant to this subsection.

175    (7)(A)  Not later than December 31 of each year, a public employer shall submit a
176    compliance report to the state auditor certifying compliance with the provisions of this
177    subsection.  Such compliance report shall contain the public employer's federal work
178    authorization program verification user number and date of authorization and the legal
179    name, address, and federal work authorization program user number of the contractor
180    and the date of the contract between the contractor and public employer.  Subject to
181    available funding, the state auditor shall conduct annual compliance audits on a
182    minimum of at least one-half of the reporting agencies and publish the results of such
183    audits annually on the department's website on or before September 30.

184    (B)  If the state auditor finds a political subdivision to be in violation of this subsection,
185    such political subdivision shall be provided 30 days to demonstrate to the state auditor
186    that such political subdivision has corrected all deficiencies and is in compliance with
187    this subsection.  If, after 30 days, the political subdivision has failed to correct all
188    deficiencies, such political subdivision shall be excluded from the list of qualified local
189    governments under Chapter 8 of Title 50 until such time as the political subdivision
190    demonstrates to the state auditor that such political subdivision has corrected all
191    deficiencies and is in compliance with this subsection.

192    (C)(i)  At any time after the state auditor finds a political subdivision to be in violation
193    of this subsection, such political subdivision may seek administrative relief through
194    the Office of State Administrative Hearings.  If a political subdivision seeks
195    administrative relief, the time for correcting deficiencies shall be tolled, and any
196    action to exclude the political subdivision from the list of qualified governments
197    under Chapter 8 of Title 50 shall be suspended until such time as a final ruling
198    upholding the findings of the state auditor is issued.

199    (ii)  A new compliance report submitted to the state auditor by the political
200    subdivision shall be deemed satisfactory and shall correct the prior deficient
201    compliance report so long as the new report fully complies with this subsection.

202    (iii)  No political subdivision of this state shall be found to be in violation of this
203    subsection by the state auditor as a result of any actions of a county constitutional
204    officer.

205    (D)  If the state auditor finds any political subdivision which is a state department or
206    agency to be in violation of the provisions of this subsection twice in a five-year period,
207    the funds appropriated to such state department or agency for the fiscal year following
208    the year in which the agency was found to be in violation for the second time shall be

209    not greater than 90 percent of the amount so appropriated in the second year of such

210    noncompliance.  Any political subdivision found to be in violation of the provisions of

211    this subsection shall be listed on www.open.georgia.gov or another official state

212    website with an indication and explanation of each violation.

213    (4)(8)  Contingent upon appropriation or approval of necessary funding and in order to

214    verify compliance with the provisions of this subsection, each year the Commissioner

215    shall conduct no fewer than 100 random audits of public employers and contractors or

216    may conduct such an audit upon reasonable grounds to suspect a violation of this

217    subsection.  The results of the audits shall be published on the www.open.georgia.gov

218    website and on the Georgia Department of Labor's website no later than December 31 of

219    each year.  The Georgia Department of Labor shall seek funding from the United States

220    Secretary of Labor to the extent such funding is available.

221    (5)(9)  Any person who knowingly and willfully makes a false, fictitious, or fraudulent

222    statement in an affidavit submitted pursuant to this subsection shall be guilty of a

223    violation of Code Section 16-10-20 and, upon conviction, shall be punished as provided

224    in such Code section.  Contractors and, subcontractors, sub-subcontractors, and any

225    person convicted for false statements based on a violation of this subsection shall be

226    prohibited from bidding on or entering into any public contract for 12 months following

227    such conviction.  A contractor, subcontractor, or sub-subcontractor that has been found

228    by the Commissioner to have violated this subsection shall be listed by the Department

229    of Labor on www.open.georgia.gov or other official website of the state with public

230    information regarding such violation, including the identity of the violator, the nature of

231    the contract, and the date of conviction.  A public employee, contractor, subcontractor,

232    or sub-subcontractor shall not be held civilly liable or criminally responsible for

233    unknowingly or unintentionally accepting a bid from or contracting with a contractor,

234    subcontractor, or sub-subcontractor acting in violation of this subsection.  Any contractor,

235    subcontractor, or sub-subcontractor found by the Commissioner to have violated this

236    subsection shall, on a second or subsequent violations, be prohibited from bidding on or

237    entering into any public contract for 12 months following the date of such finding.

238    (10)  There shall be a rebuttable presumption that a public employer, contractor,

239    subcontractor, or sub-subcontractor receiving and acting upon an affidavit conforming

240    to the content requirements of this subsection does so in good faith, and such public

241    employer, contractor, subcontractor, or sub-subcontractor may rely upon such affidavit

242    as being true and correct.  The affidavit shall be admissible in any court of law for the

243    purpose of establishing such presumption.

244    (11) Documents required by this Code section may be submitted electronically, provided

245    the submission complies with Chapter 12 of Title 10."

246                          **SECTION 4.**

247    Title 16 of the Official Code of Georgia Annotated, relating to crimes and offenses, is

248    amended in Article 8 of Chapter 9, relating to identity fraud, by adding a new Code section

249    to read as follows:

250    "16-9-121.1.

251    (a)  A person commits the offense of aggravated identity fraud when he or she willfully and

252    fraudulently uses any counterfeit or fictitious identifying information concerning a real,

253    fictitious, or deceased person with intent to use such counterfeit or fictitious identifying

254    information for the purpose of obtaining employment.

255    (b)  The offense created by this Code section shall not merge with any other offense."


256                          **SECTION 5.**

257    Said article of said title is further amended by revising Code Section 16-9-126, relating to

258    penalties for violations, as follows:

259    "16-9-126.

260    (a)  A violation of this article, other than a violation of Code Section 16-9-121.1 or

261    16-9-122, shall be punishable by imprisonment for not less than one nor more than ten

262    years or a fine not to exceed $100,000.00, or both.  Any person who commits such a

263    violation for the second or any subsequent offense shall be punished by imprisonment for

264    not less than three nor more than 15 years, a fine not to exceed $250,000.00, or both.

265    (a.1) A violation of Code Section 16-9-121.1 shall be punishable by imprisonment for not

266    less than one nor more than 15 years, a fine not to exceed $250,000.00, or both, and such

267    sentence shall run consecutively to any other sentence which the person has received.

268    (b)  A violation of this article which does not involve the intent to commit theft or

269    appropriation of any property, resource, or other thing of value that is committed by a

270    person who is less than 21 years of age shall be punishable by imprisonment for not less

271    than one nor more than three years or a fine not to exceed $5,000.00, or both.

272    (c)  Any person found guilty of a violation of this article may be ordered by the court to

273    make restitution to any consumer victim or any business victim of such fraud.

274    (d)  Each violation of this article shall constitute a separate offense.

275    (e)  Upon a conviction of a violation of this article, the court may issue any order necessary

276    to correct a public record that contains false information resulting from the actions which

277    resulted in the conviction."


278                          **SECTION 6.**

279    Said article of said title is further amended by revising Code Section 16-9-128, relating to

280    exemptions, as follows:

281  "16-9-128.

282  (a)  The prohibitions set forth in Code Sections 16-9-121, 16-9-121.1, and 16-9-122 shall

283  not apply to nor shall any cause of action arise under Code Sections 16-9-129 and 16-9-131

284  for:

285      (1)  The lawful obtaining of credit information in the course of a bona fide consumer or

286      commercial transaction;

287      (2)  The lawful, good faith exercise of a security interest or a right to offset by a creditor

288      or a financial institution;

289      (3)  The lawful, good faith compliance by any party when required by any warrant, levy,

290      garnishment, attachment, court order, or other judicial or administrative order, decree, or

291      directive; or

292      (4)  The good faith use of identifying information with the permission of the affected

293      person.

294  (b)  The exemptions provided in subsection (a) of this Code section will shall not apply to

295  a person intending to further a scheme to violate Code Section 16-9-121, 16-9-121.1, or

296  16-9-122.

297  (c)  It is shall not be necessary for the state to negate any exemption or exception in this

298  article in any complaint, accusation, indictment, or other pleading or in any trial, hearing,

299  or other proceeding under this article involving a business victim.  In such cases, the

300  burden of proof of any exemption or exception is upon the business victim claiming it."


301                              **SECTION 7.**

302  Said title is further amended in Chapter 11, relating to offenses against public order and

303  safety, by adding a new article to read as follows:


304                              "ARTICLE 5


305  16-11-200.

306  (a)  As used in this Code section, the term:

307      (1)  'Illegal alien' means a person who is verified by the federal government to be present

308      in the United States in violation of federal immigration law.

309      (2)  'Motor vehicle' shall have the same meaning as provided in Code Section 40-1-1.

310  (b)  A person who, while committing another criminal offense, knowingly and intentionally

311  transports or moves an illegal alien in a motor vehicle for the purpose of furthering the

312  illegal presence of the alien in the United States shall be guilty of the offense of

313  transporting or moving an illegal alien.

314    (c)  Except as provided in this subsection, a person convicted for a first offense of
315    transporting or moving an illegal alien who moves seven or fewer illegal aliens at the same
316    time shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by
317    imprisonment not to exceed 12 months, a fine not to exceed $1,000.00, or both.  A person
318    convicted for a second or subsequent offense of transporting or moving an illegal alien, and
319    a person convicted on a first offense of transporting or moving an illegal alien who moves
320    eight or more illegal aliens at the same time, shall be guilty of a felony and, upon
321    conviction thereof, shall be punished by imprisonment of not less than one or more than
322    five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.  A person
323    who commits the offense of transporting or moving an illegal alien who does so with the
324    intent of making a profit or receiving anything of value shall be guilty of a felony and,
325    upon conviction thereof, shall be punished by imprisonment of not less than one or more
326    than five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.
327    (d)  This Code section shall not apply to:
328    (1) A government employee transporting or moving an illegal alien as a part of his or her
329    official duties or to any person acting at the direction of such employee;
330    (2)  A person who transports an illegal alien to or from a judicial or administrative
331    proceeding when such illegal alien is required to appear pursuant to a summons,
332    subpoena, court order, or other legal process;
333    (3) A person who transports an illegal alien to a law enforcement agency or a judicial
334    officer for official government purposes;
335    (4) An employer transporting an employee who was lawfully hired; or
336    (5) A person providing privately funded social services.

337    16-11-201.
338    (a)  As used in this Code section, the term:
339    (1) 'Harboring' or 'harbors' means any conduct that tends to substantially help an illegal
340    alien to remain in the United States in violation of federal law but shall not include a
341    person providing services to infants, children, or victims of a crime; a person providing
342    privately funded social services; a person providing emergency medical service; or an
343    attorney or his or her employees for the purpose of representing a criminal defendant.
344    (2) 'Illegal alien' means a person who is verified by the federal government to be present
345    in the United States in violation of federal immigration law.
346    (b)  A person who is acting in violation of another criminal offense and who knowingly
347    conceals, harbors, or shields an illegal alien from detection in any place in this state,
348    including any building or means of transportation, when such person knows that the person

349    being concealed, harbored, or shielded is an illegal alien, shall be guilty of the offense of
350    concealing or harboring an illegal alien.
351    (c)  Except as provided in this subsection, a person convicted of concealing or harboring
352    an illegal alien who conceals or harbors seven or fewer illegal aliens at the same time in
353    the same location shall be guilty of a misdemeanor and, upon conviction thereof, shall be
354    punished by imprisonment not to exceed 12 months, a fine not to exceed $1,000.00, or
355    both.  A person convicted of concealing or harboring an illegal alien who conceals or
356    harbors eight or more illegal aliens at the same time in the same location, or who conceals
357    or harbors an illegal alien with the intent of making a profit or receiving anything of value,
358    shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment
359    of not less than one or more than five years, a fine of not less than $5,000.00 or more than
360    $20,000.00, or both.
361    (d)  This Code section shall not apply to a government employee or any person acting at
362    the express direction of a government employee who conceals, harbors, or shelters an
363    illegal alien when such illegal alien is or has been the victim of a criminal offense or is a
364    witness in any civil or criminal proceeding or who holds an illegal alien in a jail, prison,
365    or other detention facility.

366    16-11-202.
367    (a)  As used in this Code section, the term 'illegal alien' means a person who is verified by
368    the federal government to be present in the United States in violation of federal
369    immigration law.
370    (b)  A person who is acting in violation of another criminal offense and who knowingly
371    induces, entices, or assists an illegal alien to enter into this state, when such person knows
372    that the person being induced, enticed, or assisted to enter into this state is an illegal alien,
373    shall be guilty of the offense of inducing an illegal alien to enter into this state.
374    (c)  Except as provided in subsection (d) of this Code section, for a first offense, a person
375    convicted of inducing an illegal alien to enter into this state shall be guilty of a
376    misdemeanor and, upon conviction thereof, shall be punished by imprisonment not to
377    exceed 12 months, a fine not to exceed $1,000.00, or both.  For a second or subsequent
378    conviction of inducing an illegal alien to enter into this state, a person shall be guilty of a
379    felony and, upon conviction thereof, shall be punished by imprisonment of not less than
380    one or more than five years, a fine of not less than $5,000.00 or more than $20,000.00, or
381    both.
382    (d)  A person who commits the offense of inducing an illegal alien to enter into this state
383    who does so with the intent of making a profit or receiving any thing of value shall be
384    guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not

385     less than one or more than five years, a fine of not less than $5,000.00 or more than
386     $20,000.00, or both.


387     16-11-203.
388     The testimony of any officer, employee, or agent of the federal government having
389     confirmed that a person is an illegal alien shall be admissible to prove that the federal
390     government has verified such person to be present in the United States in violation of
391     federal immigration law.  Verification that a person is present in the United States in
392     violation of federal immigration law may also be established by any document authorized
393     by law to be recorded or filed and in fact recorded or filed in a public office where items
394     of this nature are kept."


395                                      **SECTION 8.**
396     Chapter 5 of Title 17 of the Official Code of Georgia Annotated, relating to searches and
397     seizures, is amended by adding a new article to read as follows:


398                                      "ARTICLE 5


399     17-5-100.
400     (a)  As used in this Code section, the term:
401         (1) 'Criminal violation' means a violation of state or federal criminal law but shall not
402         include a violation of a county or municipal law, regulation, or ordinance.
403         (2) 'Illegal alien' means a person who is verified by the federal government to be present
404         in the United States in violation of federal immigration law.
405     (b)  Except as provided in subsection (f) of this Code section, during any investigation of
406     a criminal suspect by a peace officer, when such officer has probable cause to believe that
407     a suspect has committed a criminal violation, the officer shall be authorized to seek to
408     verify such suspect's immigration status when the suspect is unable to provide one of the
409     following:
410         (1) A secure and verifiable document as defined in Code Section 50-36-2;
411         (2) A valid Georgia driver's license;
412         (3) A valid Georgia identification card issued by the Department of Driver Services;
413         (4) If the entity requires proof of legal presence in the United States before issuance, any
414         valid driver's license from a state or district of the United States or any valid
415         identification document issued by the United States federal government;
416         (5) A document used in compliance with paragraph (2) of subsection (a) of Code Section
417         40-5-21; or

418      (6)  Other information as to the suspect's identity that is sufficient to allow the peace
419      officer to independently identify the suspect.
420      (c)  When attempting to determine the immigration status of a suspect pursuant to
421      subsection (b) of this Code section, a peace officer shall be authorized to use any
422      reasonable means available to determine the immigration status of the suspect, including:
423      (1)  Use of any authorized federal identification data base;
424      (2)  Identification methods authorized by federal law, including those authorized by 8
425      USCA 1373(c), 8 USCA 1644;
426      (3)  Use of electronic fingerprint readers or similar devices; or
427      (4)  Contacting an appropriate federal agency.
428      (d)  A peace officer shall not consider race, color, or national origin in implementing the
429      requirements of this Code section except to the extent permitted by the Constitutions of
430      Georgia and of the United States.
431      (e)  If during the course of the investigation into such suspect's identity, a peace officer
432      receives verification that such suspect is an illegal alien, then such peace officer may take
433      any action authorized by state and federal law, including, but not limited to, detaining such
434      suspected illegal alien, securely transporting such suspect to any authorized federal or state
435      detention facility, or notifying the United States Department of Homeland Security or
436      successor agency.  Nothing in this Code section shall be construed to hinder or prevent a
437      peace officer or law enforcement agency from arresting or detaining any criminal suspect
438      on other criminal charges.
439      (f)  No person who in good faith contacts or has contact with a state or local peace officer
440      or prosecuting attorney or member of the staff of a prosecuting attorney for the purpose of
441      acting as a witness to a crime, to report criminal activity, or to seek assistance as a victim
442      to a crime shall have his or her immigration status investigated based on such contact or
443      based on information arising from such contact.
444      (g)  A peace officer, prosecuting attorney, or government official or employee, acting in
445      good faith to carry out any provision of this Code section, shall have immunity from
446      damages or liability from such actions."


447                                       **SECTION 9.**
448      Title 35 of the Official Code of Georgia Annotated, relating to law enforcement officers and
449      agencies, is amended by adding a new Code section to read as follows:
450      "35-1-16.
451      (a)  It is the intent of the General Assembly to encourage Georgia law enforcement officials
452      to work in conjunction with federal immigration authorities and to utilize all resources

453    made available by the federal government to assist state and local law enforcement officers

454    in the enforcement of the immigration laws of this state and of the United States.

455    (b)  **Cooperation with federal authorities.**

456    (1)  To the extent authorized by federal law, state and local government employees,

457    including law enforcement officers and prosecuting attorneys, shall be authorized to send,

458    receive, and maintain information relating to the immigration status of any individual as

459    reasonably needed for public safety purposes.  Except as provided by federal law, such

460    employees shall not be prohibited from receiving or maintaining information relating to

461    the immigration status of any individual or sending or exchanging such information with

462    other federal, state, or local governmental entities or employees for official public safety

463    purposes.

464    (2)  State and local agencies shall be authorized to enter into memorandum of

465    understandings and agreements with the United States Department of Justice, the

466    Department of Homeland Security, or any other federal agency for the purpose of

467    enforcing federal immigration and customs laws and the detention, removal, and

468    investigation of illegal aliens and the immigration status of any person in this state.  A

469    peace officer acting within the scope of his or her authority under any such memorandum

470    of understanding, agreement, or other authorization from the federal government shall

471    have the power to arrest, with probable cause, any person suspected of being an illegal

472    alien.

473    (3)  Except as provided by federal law, no state or local agency or department shall be

474    prohibited from utilizing available federal resources, including data bases, equipment,

475    grant funds, training, or participation in incentive programs for any public safety purpose

476    related to the enforcement of state and federal immigration laws.

477    (4)  When reasonably possible, applicable state agencies shall consider incentive

478    programs and grant funding for the purpose of assisting and encouraging state and local

479    agencies and departments to enter into agreements with federal entities and to utilize

480    federal resources consistent with the provisions of this Code section.

481    (c)  **Authority to transport illegal aliens.**  If a state or local law enforcement officer has

482    verification that a person is an illegal alien, then such officer shall be authorized to securely

483    transport such illegal alien to a federal facility in this state or to any other temporary point

484    of detention and to reasonably detain such illegal alien when authorized by federal law.

485    Nothing in this Code section shall be construed to hinder or prevent a peace officer or law

486    enforcement agency from arresting or detaining any criminal suspect on other criminal

487    charges.

488 (d)  **Authority to arrest illegal aliens.**  When authorized by federal law, a state or local
489 law enforcement officer shall be authorized to arrest any person based on such person's
490 status as an illegal alien or for a violation of any federal immigration law.
491 (e)  **Immunity.**  A law enforcement officer or government official or employee, acting in
492 good faith to enforce immigration laws pursuant to an agreement with federal authorities
493 to collect or share immigration status information, or to carry out any provision of this
494 Code section, shall have immunity from damages or liability from such actions."

495        **SECTION 10.**
496 Said title is further amended in Code Section 35-2-14, relating to defining peace officer and
497 the enforcement of immigration and custom laws, by revising subsection (d) as follows:
498 "(d)  The commissioner shall annually designate ~~appropriate~~ no fewer than ten peace
499 officers to apply to be trained pursuant to the memorandum of understanding provided for
500 in subsections (b) and (c) of this Code section.  Such training shall be funded pursuant to
501 ~~the~~ any federal Homeland Security Appropriation Act ~~of 2006, Public Law 109-90,~~ or any
502 subsequent source of federal funding.  The provisions of this subsection shall become
503 effective upon such funding."

504        **SECTION 11.**
505 Said title is further amended by adding a new Code section to read as follows:
506 "35-6A-10.
507 (a)  Subject to available funding, the council shall establish a grant or incentive program
508 for the provision of funds to local law enforcement agencies as incentive to such agencies
509 to use the federal Department of Homeland Security's Secure Communities initiative or any
510 successor or similar program and shall establish an incentive program and a grant program
511 to offset the costs for local law enforcement agencies to enter into and implement
512 memorandums of agreement with federal agencies under Section 287(g) of the federal
513 Immigration and Nationality Act.  In awarding such grants or incentives, the council shall
514 be authorized to consider and give priority to local areas with the highest crime rates for
515 crimes committed by illegal aliens.
516 (b)  The council shall:
517 (1)  Subject to available funding, provide incentive programs and grants to local law
518 enforcement agencies for utilizing federal resources and for entering into agreements with
519 federal agencies for the enforcement of immigration law;
520 (2)  Provide technical assistance to local governments and agencies for obtaining and
521 qualifying for incentive programs and grant funds to utilize available federal resources

522    and to enter into and implement such agreements provided for in subsection (a) of this
523    Code section;
524    (3)  Communicate information regarding the availability of federal resources and
525    agreements provided for in subsection (a) of this Code section and the availability of
526    related incentive programs and grant funds and post such information on the agency's
527    official Internet website;
528    (4)  Provide technical assistance and information regarding the process for contacting
529    federal agencies, utilizing federal resources, and entering into agreements provided for
530    in subsection (a) of this Code section and post such information on the agency's official
531    Internet website; and
532    (5)  Support state-wide campaigns and information programs in an effort to encourage
533    every local law enforcement agency in this state to utilize federal resources and enter into
534    agreements for the enforcement of state and federal immigration law."


535                                **SECTION 12.**
536    Chapter 60 of Title 36 of the Official Code of Georgia Annotated, relating to general
537    provisions applicable to local governments, is amended by revising Code Section 36-60-6,
538    relating to issuance of local business licenses and evidence of state licensure, as follows:
539    "36-60-6.
540    (a)  Every private employer with more than ten employees shall register with and utilize
541    the federal work authorization program, as defined by Code Section 13-10-90.  The
542    requirements of this subsection shall be effective on January 1, 2012, as to employers with
543    500 or more employees, on July 1, 2012, as to employers with 100 or more employees but
544    fewer than 500 employees, and on July 1, 2013, as to employers with more than ten
545    employees but fewer than 100 employees.
546    (b)  For purposes of this Code section, the term 'employee' shall have the same meaning as
547    set forth in subparagraph (A) of paragraph (1.1) of Code Section 48-13-5, provided that
548    such person is also employed to work not less than 35 hours per week.
549    (a)(c)  Before any county or municipal corporation issues a business license, occupational
550    tax certificate, or other document required to operate a business to any person engaged in
551    a profession or business required to be licensed by the state under Title 43, the person ~~must~~
552    shall  provide  evidence  of  such  licensure  to  the  appropriate  agency  of  the  county  or
553    municipal corporation that issues business licenses. No business license, occupational tax
554    certificate, or other document required to operate a business shall be issued to any person
555    subject to licensure under Title 43 without evidence of such licensure being presented.
556    (d)  Before  any  county  or  municipal  corporation  issues  or  renews  a  business  license,
557    occupational tax certificate, or other document required to operate a business to any person,

558  the person shall provide evidence that he or she is authorized to use the federal work
559  authorization program or evidence that the provisions of this Code section do not apply.
560  Evidence of such use shall be in the form of an affidavit as provided by the Attorney
561  General in subsection (f) of this Code section attesting that he or she utilizes the federal
562  work authorization program in accordance with federal regulations or that he or she
563  employs fewer than 11 employees or otherwise does not fall within the requirements of this
564  Code section.  Whether an employer is exempt from using the federal work authorization
565  program as required by this Code section shall be determined by the number of employees
566  employed by such employer on January 1 of the year during which the affidavit is
567  submitted.  The affidavit shall include the employer's federally assigned employment
568  eligibility verification system user number and the date of authority for use.  The
569  requirements of this subsection shall be effective on January 1, 2012, as to employers with
570  500 or more employees, on July 1, 2012, as to employers with 100 or more employees but
571  fewer than 500 employees, and on July 1, 2013, as to employers with more than ten
572  employees but fewer than 100 employees.
573  (e)  Beginning December 31, 2012, and annually thereafter, any county or municipal
574  corporation issuing or renewing a business license, occupational tax certificate, or other
575  document required to operate a business shall provide to the Department of Audits and
576  Accounts a report demonstrating that such county or municipality is acting in compliance
577  with the provisions of this Code section.  This annual report shall identify each license or
578  certificate issued by the agency in the preceding 12 months and include the name of the
579  person and business issued a license or other document and his or her federally assigned
580  employment eligibility verification system user number as provided in the affidavit
581  submitted at the time of application.  Subject to funding, the Department of Audits and
582  Accounts shall annually conduct an audit of no fewer than 20 percent of such reporting
583  agencies.
584  (f)  In order to assist private businesses and counties and municipal corporations in
585  complying with the provisions of this Code section, the Attorney General shall provide a
586  standardized form affidavit which may be used as acceptable evidence demonstrating use
587  of the federal employment eligibility verification system or that the provisions of
588  subsection (b) of this Code section do not apply to the applicant.  The form affidavit shall
589  be posted by the Attorney General on the Department of Law's official website no later
590  than January 1, 2012.
591  (g)  Once an applicant for a business license, occupational tax certificate, or other
592  document required to operate a business has submitted an affidavit with a federally
593  assigned employment eligibility verification system user number, he or she shall not be
594  authorized to submit a renewal application using a new or different federally assigned

595  employment eligibility verification system user number, unless accompanied by a sworn
596  document explaining the reason such applicant obtained a new or different federally
597  assigned employment eligibility verification system user number.
598  ~~(b)~~(h)  Any person presenting false or misleading evidence of ~~such~~ state licensure shall be
599  guilty of a misdemeanor.  Any government official or employee knowingly acting in
600  violation of this Code section shall be guilty of a misdemeanor; provided, however, that
601  any person who knowingly submits a false or misleading affidavit pursuant to this Code
602  section shall be guilty of submitting a false document in violation of Code Section
603  16-10-20.  It shall be a defense to a violation of this Code section that such person acted
604  in good faith and made a reasonable attempt to comply with the requirements of this Code
605  section.
606  (i) Documents required by this Code section may be submitted electronically, provided the
607  submission complies with Chapter 12 of Title 10.
608  (j)  The Attorney General shall be authorized to conduct an investigation and bring any
609  criminal or civil action he or she deems necessary to ensure compliance with the provisions
610  of this Code section.  The Attorney General shall provide an employer who is found to
611  have committed a good faith violation of this Code section 30 days to demonstrate to the
612  Attorney General that such employer has come into compliance with this Code section.
613  During the course of any investigation of violations of this Code section, the Attorney
614  General shall also investigate potential violations of Code Section 16-9-121.1 by
615  employees that may have led to violations of this Code section."


616                                      **SECTION 13.**
617  Title 42 of the Official Code of Georgia Annotated, relating to penal institutions, is amended
618  by revising Code Section 42-4-14, relating to determination of nationality of a person
619  charged with felony and confined in a jail facility, as follows:
620  "42-4-14.
621  (a)  As used in this Code section, the term 'illegal alien' means a person who is verified by
622  the federal government to be present in the United States in violation of federal
623  immigration law.
624  ~~(a)~~(b)  When any person is confined, for any period, in the jail of a county or municipality
625  or a jail operated by a regional jail authority in compliance with Article 36 of the Vienna
626  Convention on Consular Relations, a reasonable effort shall be made to determine the
627  nationality of the person so confined.
628  ~~(c)~~(b)  ~~If the prisoner is a foreign national charged with a felony, driving under the~~
629  ~~influence pursuant to Code Section 40-6-391, driving without being licensed pursuant to~~
630  ~~subsection (a) of Code Section 40-5-20, or with a misdemeanor of a high and aggravated~~

631   ~~nature, the keeper of the jail or other officer shall make~~ When any foreign national is

632   confined, for any period, in a county or municipal jail, a reasonable effort shall be made

633   to verify that ~~the prisoner~~ such foreign national has been lawfully admitted to the United

634   States and if lawfully admitted, that such lawful status has not expired.  If verification of

635   lawful status ~~can not~~ cannot be made from documents in the possession of the ~~prisoner~~

636   foreign national, verification shall be made within 48 hours through a query to the Law

637   Enforcement Support Center (LESC) of the United States Department of Homeland

638   Security or other office or agency designated ~~for that purpose by the United States~~

639   ~~Department of Homeland Security~~ by the federal government.  If the ~~prisoner~~ foreign

640   national is determined ~~not to be lawfully admitted to the United States~~ to be an illegal alien,

641   the keeper of the jail or other officer shall notify the United States Department of

642   Homeland Security, or other office or agency designated for notification by the federal

643   government.

644   ~~(c)~~(d) Nothing in this Code section shall be ~~construed~~ to deny a person bond or from being

645   released from confinement when such person is otherwise eligible for release; provided,

646   however, that upon verification that any person confined in a jail is an illegal alien, such

647   person may be detained, arrested, and transported as authorized by state and federal law.

648   ~~(d)~~(e) The Georgia Sheriffs Association shall prepare and issue guidelines and procedures

649   used to comply with the provisions of this Code section."


650                                           **SECTION 14.**

651   Said title is further amended by revising subsection (c) of Code Section 42-5-51, relating to

652   reimbursement of counties for housing certain inmates, as follows:

653   "(c)  After proper documentation is received from the clerk of the court, the department

654   shall have 15 days to transfer an inmate under sentence to the place of confinement.  If the

655   inmate is not transferred within the 15 days, the department ~~will~~ shall reimburse the county,

656   in a sum not less than $7.50 per day per inmate and in such an amount as may be

657   appropriated for this purpose by the General Assembly, for the cost of the incarceration,

658   commencing 15 days after proper documentation is received by the department from the

659   clerk of the court; provided, however, that, subject to an appropriation of funds, local

660   governing authorities that have entered into memorandums of understanding or agreement

661   or that demonstrate continuous attempts to enter into memorandums of understanding or

662   agreement with the federal government under Section 287(g) of the federal Immigration

663   and Nationality Act shall receive an additional payment in the amount of 10 percent of the

664   established rate paid for reimbursement for the confinement of state inmates in local

665   confinement facilities. The reimbursement provisions of this Code section shall only apply

666   to payment for the incarceration of felony inmates available for transfer to the department,

667    except inmates under death sentence awaiting transfer after their initial trial, and shall not

668    apply to inmates who were incarcerated under the custody of the commissioner at the time

669    they were returned to the county jail for trial on additional charges or returned to the county

670    jail for any other purposes, including for the purpose of a new trial."

671                       **SECTION 15.**

672    Title 45 of the Official Code of Georgia Annotated, relating to public officers and employees,

673    is amended by revising Code Section 45-10-28, relating to penalties for a violation of Part 1

674    of Article 2 of Chapter 10 of Title 45  and civil actions by the Attorney General to collect

675    penalties, as follows:

676    "45-10-28.

677       (a)(1)  Any appointed public official or employee who violates Code Section 45-10-22,

678       45-10-23, 45-10-24, or 45-10-26 shall be subject to:

679       (A)  Removal from office or employment;

680       (B)  A civil fine not to exceed $10,000.00; and

681       (C)  Restitution to the state of any pecuniary benefit received as a result of such

682       violation.

683       (2) Any elected public official who violates Code Section 45-10-22, 45-10-23, 45-10-24,

684       or 45-10-26 shall be subject to:

685       (A)  A civil fine not to exceed $10,000.00; and

686       (B)  Restitution to the state of any pecuniary benefit received as a result of such

687       violation.

688       (3)  Any business which violates Code Section 45-10-22, 45-10-23, 45-10-24, or

689       45-10-26 shall be subject to:

690       (A)  A civil fine not to exceed $10,000.00; and

691       (B)  Restitution to the state of any pecuniary benefit received as a result of such

692       violation.

693    (b)  The penalties provided for in subsection (a) of this Code section may be imposed in

694    any civil action brought for that purpose, and such actions shall be brought by the Attorney

695    General.

696    (c)  As used in this subsection, the term 'agency head' shall have the same meaning as set

697    forth in Code Section 50-36-1.  Any public official, agency head, or employee who violates

698    Code Section 13-10-91 or 50-36-1 shall be subject to:

699       (A)  A civil fine not to exceed $10,000.00;

700       (B)  Restitution to the state or local government, whichever is applicable, of any

701       pecuniary benefit received as a result of such violation; and

11                                                                                         HB 87/AP

702      (C)  Where such violation is committed knowingly and intentionally, removal from
703      office or employment."


                                      **SECTION 16.**

704  Chapter 36 of Title 50 of the Official Code of Georgia Annotated, relating to verification of
705  lawful presence within the United States, is amended by revising subsection (a) of Code
706  Section 50-36-1, relating to verification of lawful presence within the United States for
707  receipt of certain government benefits, by renumbering paragraphs (1) through (3) as
708  paragraphs (2) through (4), respectively, and by adding a new paragraph (1) to read as
709  follows:
710  "(1) 'Agency head' means a director, commissioner, chairperson, mayor, councilmember,
711  board member, sheriff, or other executive official, whether appointed or elected,
712  responsible for establishing policy for a public employer."


                                      **SECTION 17.**

714  Said Code section of said chapter is further amended by revising subsection (e) as follows:
715  "(e) An agency or political subdivision providing or administering a public benefit shall
716  require every applicant for such benefit to:
717  (1)  Provide at least one secure and verifiable document, as defined in Code Section
718  50-36-2;
719  (2)  Execute execute a signed and sworn affidavit verifying the applicant's lawful
720  presence in the United States, which affidavit shall state:
721  (1)(A) The applicant is a United States citizen or legal permanent resident 18 years of
722  age or older; or
723  (2)(B)  The applicant is a qualified alien or nonimmigrant under the federal
724  Immigration and Nationality Act, Title 8 U.S.C., as amended, 18 years of age or older
725  lawfully present in the United States and provide the applicant's alien number issued
726  by the Department of Homeland Security or other federal immigration agency; and
727  (3) The state auditor shall create affidavits for use under this Code section and shall keep
728  a current version of such affidavits on the Department of Audits and Account's official
729  website.
730  (4)  Documents required by this Code section may be submitted electronically, provided
731  the submission complies with Chapter 12 of Title 10."


                                      **SECTION 18.**

733  Said Code section of said chapter is further amended by revising subsection (o) as follows:

735    "(o)  No employer, agency, or political subdivision shall be subject to lawsuit or liability

736    arising from any act to comply with the requirements of this chapter; provided, however,

737    that the intentional and knowing failure of any agency head to abide by the provisions of

738    this chapter shall:

739       (1)  Be a violation of the code of ethics for government service established in Code

740    Section 45-10-1 and subject such agency head to the penalties provided for in Code

741    Section 45-10-28, including removal from office and a fine not to exceed $10,000.00; and

742       (2)  Be a high and aggravated misdemeanor offense where such agency head acts to

743    willfully violate the provisions of this Code section or acts so as to intentionally and

744    deliberately interfere with the implementation of the requirements of this Code section.

745    The Attorney General shall have the authority to conduct a criminal and civil investigation

746    of an alleged violation of this chapter by an agency or agency head and to bring a

747    prosecution or civil action against an agency or agency head for all cases of violations

748    under this chapter.  In the event that an order is entered against an employer, the state shall

749    be awarded attorney's fees and expenses of litigation incurred in bringing such an action

750    and investigating such violation."


751                                          **SECTION 19.**

752    Said chapter is further amended by adding a new Code section to read as follows:

753    "50-36-2.

754    (a)  This Code section shall be known and may be cited as the 'Secure and Verifiable

755    Identity Document Act.'

756    (b)  As used in this Code section, the term:

757       (1)  'Agency or political subdivision' means any department, agency, authority,

758    commission, or government entity of this state or any subdivision of this state.

759       (2)  'Public official' means an elected or appointed official or an employee or an agent of

760    an agency or political subdivision.

761       (3)  'Secure and verifiable document' means a document issued by a state or federal

762    jurisdiction or recognized by the United States government and that is verifiable by

763    federal or state law enforcement, intelligence, or homeland security agencies.  Secure and

764    verifiable document shall not mean a Matricula Consular de Alta Seguridad, matricula

765    consular card, consular matriculation card, consular identification card, or similar

766    identification card issued by a foreign government regardless of the holder's immigration

767    status.  Only those documents approved and posted by the Attorney General pursuant to

768    subsection (f) of this Code section shall be considered secure and verifiable documents.

769    (c)  Unless required by federal law, on or after January 1, 2012, no agency or political

770    subdivision shall accept, rely upon, or utilize an identification document for any official

771  purpose that requires the presentation of identification by such agency or political
772  subdivision or by federal or state law unless it is a secure and verifiable document.
773  (d)  Any person acting in willful violation of this Code section by knowingly accepting
774  identification documents that are not secure and verifiable documents shall be guilty of a
775  misdemeanor and, upon conviction thereof, shall be punished by imprisonment not to
776  exceed 12 months, a fine not to exceed $1,000.00, or both.
777  (e)  This Code section shall not apply to:
778  (1)  A person reporting a crime;
779  (2)  An agency official accepting a crime report, conducting a criminal investigation, or
780  assisting a foreign national to obtain a temporary protective order;
781  (3)  A person providing services to infants, children, or victims of a crime;
782  (4)  A person providing emergency medical service;
783  (5)  A peace officer in the performance of the officer's official duties and within the scope
784  of his or her employment;
785  (6)  Instances when a federal law mandates acceptance of a document;
786  (7)  A court, court official, or traffic violation bureau for the purpose of enforcing a
787  citation, accusation, or indictment;
788  (8)  Paragraph (2) of subsection (a) of Code Section 40-5-21 or paragraph (2) of
789  subsection (a) of Code Section 40-5-21.1; or
790  (9)  An attorney or his or her employees for the purpose of representing a criminal
791  defendant.
792  (f)  Not later than August 1, 2011, the Attorney General shall provide and make public on
793  the Department of Law's website a list of acceptable secure and verifiable documents. The
794  list shall be reviewed and updated annually by the Attorney General."


795                                    **SECTION 20.**
796  Said chapter is further amended by adding a new Code section to read as follows:
797  "50-36-3.
798  (a)  As used in this Code section, the term:
799  (1)  'Board' means the Immigration Enforcement Review Board.
800  (2)  'Public agency or employee' means any government, department, commission,
801  committee, authority, board, or bureau of this state or any political subdivision of this
802  state and any employee or official, whether appointed, elected, or otherwise employed
803  by such a governmental entity.
804  (3)  'Served' or 'service' means delivery by certified mail or statutory overnight delivery,
805  return receipt requested.

806   (b)  The Immigration Enforcement Review Board is established and shall consist of seven
807   members.  Three members shall be appointed by the Governor, two members shall be
808   appointed by the Lieutenant Governor, and two members shall be appointed by the Speaker
809   of the House of Representatives.  A chairperson shall be selected by a majority vote of the
810   members.  All matters before the board shall be determined by a majority vote of qualified
811   board members.  Members shall be appointed for terms of two years and shall continue to
812   hold such position until their successors are duly appointed and qualified.  A member may
813   be reappointed to an additional term.  If a vacancy occurs in the membership of the board,
814   the appropriate appointing party shall appoint a successor for the remainder of the
815   unexpired term and until a successor is appointed and qualified.
816   (c)   The board shall be attached to the Department of Audits and Accounting for
817   administrative purposes.  The members of the board shall receive no compensation for their
818   services but shall be reimbursed for any expenses incurred in connection with the
819   investigation and review of complaints from funds of the board appropriated to the
820   Department of Audits and Accounting for such purposes.
821   (d)  The Immigration Enforcement Review Board shall have the following duties:
822   (1) To conduct a review or investigation of any complaint properly filed with the board;
823   (2) To take such remedial action deemed appropriate in response to complaints filed with
824   the board, including holding hearings and considering evidence;
825   (3) To make and adopt rules and regulations consistent with the provisions of this Code
826   section; and
827   (4) To subpoena relevant documents and witnesses and to place witnesses under oath for
828   the provision of testimony in matters before the board.
829   (e) The board shall have the authority to investigate and review any complaint with respect
830   to all actions of a public agency or employee alleged to have violated or failed to properly
831   enforce the provisions of Code Section 13-10-91, 36-80-23, or 50-36-1 with which such
832   public agency or employee was required to comply.  Complaints may be received from any
833   legal resident of this state as defined by Code Section 40-2-1 who is also a legally
834   registered voter.  The method and grounds for filing a complaint shall be posted on the
835   Department of Audits and Accounting's website.
836   (f) The board shall meet at a minimum of once every three months and shall send a notice
837   to all interested parties of the places and times of its meetings.  The board shall issue a
838   written report of its findings in all complaints which shall include such evaluations,
839   judgments, and recommendations as it deems appropriate.
840   (g) The initial review or hearing may, as determined by the board, be conducted by the full
841   board or by one or more board members.  Such review panel or members shall make
842   findings and issue an initial decision.  The initial decision shall be served upon the

843   complaining party and the applicable public agency or employee that is the subject of a
844   complaint within 60 calendar days.  If the findings are adverse to the public agency or
845   employee, or both, such party shall have 30 days to take the necessary remedial action, if
846   any, and show cause why sanctions should not be imposed.
847   (h)  In the event that the remedial action does not occur to the satisfaction of the review
848   panel or members, the reviewing panel or members shall make a recommendation
849   specifying an appropriate sanction.  Sanctions may include revocation of qualified local
850   government status, loss of state appropriated funds, and a monetary fine of not less than
851   $1,000.00 or more than $5,000.00.  Sanctions shall only be imposed against an individual
852   employee or official where there is a finding supported by a preponderance of the evidence
853   that such individual knowingly and willfully violated or failed to abide by the provisions
854   of Code Section 13-10-91, 36-80-23, or 50-36-1.
855   (i)  The initial decision or recommendation for sanctions, or both, shall be served upon the
856   complaining party and the applicable public agency or employee that is the subject of a
857   complaint.  Where an initial decision is made by fewer than the entire board, the decision
858   may be appealed to the full board.  Appeals shall be filed with the board not later than 30
859   days following the recommendation for sanctions, or 30 days following the initial decision,
860   if no adverse findings were made.  Appeals may be made by the complainant or sanctioned
861   public agency or employee.  The full board shall by majority vote affirm, overturn, or
862   modify the initial decision. The board may conduct a further hearing on the matter, or make
863   a final decision based on the record from any previously held hearing by the original
864   reviewing panel or members, or determine that no action is necessary based on the
865   information before the board.  Where the initial decision or recommendation is made by
866   the full board, such decision shall be the final decision of the board following 30 days after
867   service on the public agency or employee, unless further action is taken by the board prior
868   to the expiration of the 30 day period.
869   (j)  When a public agency or employee fails to take the specified remedial action, the
870   Attorney General shall be authorized to bring a civil mandamus action against such public
871   agency or employee to enforce compliance with applicable law and the sanctions
872   recommended by the board.  Nothing contained in this Code section shall prohibit the
873   Attorney General from seeking any other remedy available by law."

874                                   **SECTION 20.1.**
875   WHEREAS, Georgia's agricultural industry is a vital pillar for this state's economy and
876   essential to the quality of life enjoyed by all Georgians; and

877  WHEREAS, understanding the impact of immigration reform measures on Georgia's
878  important agricultural industry is a fundamental key to the implementation of immigration
879  reform in a manner that is in the best interests of this state; and

880  WHEREAS, the General Assembly recognizes that the federal guest worker program,
881  designated the H-2A visa program, for temporary and seasonal agriculture immigrant
882  workers is administratively cumbersome and flawed; and

883  WHEREAS, both Georgia and federal law fail to address many of the legal, economic, and
884  security aspects of immigration issues facing our state and especially our agricultural
885  industry; and

886  WHEREAS, these issues of great importance to the economy and of this state have not
887  before received extensive study by the Georgia General Assembly and merit such detailed
888  and specialized consideration at this time.

889  NOW, THEREFORE, BE IT RESOLVED BY THE GENERAL ASSEMBLY OF
890  GEORGIA that the Department of Agriculture is directed to conduct a study of the
891  conditions, needs, issues, and problems mentioned above or related thereto and recommend
892  any actions or legislation that the department deems necessary or appropriate.  The
893  Department of Agriculture shall consider the current and future impact of immigration on the
894  state agricultural industry.  The department shall work in conjunction with and collect expert
895  testimony and information from the United States Department of Agriculture, the Department
896  of Justice, and other state governments.  The department shall specifically address the need
897  for reform of the federal H-2A program and provide recommendations for such federal
898  reform.  In addition, the department shall recommend changes needed in Georgia to provide
899  for improvements in the H-2A process, identify where such action may be taken by the state,
900  and provide a report evaluating the legal and economic feasibility of implementing a state
901  guest worker program.  The department may conduct such meetings at such places and at
902  such times as it may deem necessary or convenient to enable it to exercise fully and
903  effectively its powers, perform its duties, and accomplish the objectives and purposes of this
904  resolution.  The Department of Agriculture shall make a final written report to the Governor,
905  the President of the Senate, and the Speaker of the House of Representatives not later than
906  January 1, 2012.  Provided that the provisions of this Act have been complied with, the
907  department shall not have any further obligation to continue such study on or after January
908  1, 2012.

909                                    **SECTION 21.**

910    (a)  If any provision or part of any provision of this Act or the application of the same is held

911    invalid or unconstitutional, the invalidity shall not affect the other provisions or applications

912    of this Act or any other part of this Act than can be given effect without the invalid provision

913    or application, and to this end, the provisions of this Act are severable.

914    (b)  The terms of this Act regarding immigration shall be construed to have the meanings

915    consistent with such terms under federal immigration law.

916    (c)  The provisions of this Act shall be implemented in a manner consistent with federal laws

917    governing immigration and civil rights.


918                                    **SECTION 22.**

919    Section 17 of this Act shall become effective on January 1, 2012.  The remaining sections

920    of this Act shall become effective on July 1, 2011.  Except as otherwise expressly provided,

921    the sections of this Act shall apply to offenses and violations occurring on or after their

922    respective effective dates.


923                                    **SECTION 23.**

924    All laws and parts of laws in conflict with this Act are repealed.