# EXHIBIT 1

11                                                                                HB 87/AP

House Bill 87 (AS PASSED HOUSE AND SENATE)

By: Representatives Ramsey of the 72nd, Golick of the 34th, Dempsey of the 13th, Austin of the 10th, Allison of the 8th, and others

A BILL TO BE ENTITLED

AN ACT

To enact the "Illegal Immigration Reform and Enforcement Act of 2011"; to amend Article 3 of Chapter 10 of Title 13 of the Official Code of Georgia Annotated, relating to security and immigration compliance, so as to provide penalties for the failure of a public employer to utilize the federal work authorization program; to require certain private employers to utilize the federal work authorization program; to provide for review by the state auditor and the Department of Labor; to provide for definitions; to amend Title 16 of the Official Code of Georgia Annotated, relating to crimes and offenses, so as to provide for offenses involving illegal aliens; to provide for the offense of aggravated identity fraud; to provide for penalties; to amend Chapter 5 of Title 17 of the Official Code of Georgia Annotated, relating to searches and seizures, so as to provide for the investigation of illegal alien status; to amend Title 35 of the Official Code of Georgia Annotated, relating to law enforcement officers and agencies, so as to provide authority for law enforcement officers to enforce federal immigration laws under certain circumstances and to provide immunity for such officers subject to limitations; to provide for civil and criminal penalties; to modify provisions relating to training peace officers for enforcement of immigration and custom laws; to establish grant funding for local law enforcement agencies to enter into agreements with federal agencies for the enforcement of immigration law; to amend Chapter 60 of Title 36 of the Official Code of Georgia Annotated, relating to general provisions applicable to local governments, so as to require proof that private businesses are participating in the employment eligibility verification system prior to the issuance of a business license or other documents; to amend Title 42 of the Official Code of Georgia Annotated, relating to penal institutions, so as to provide for the verification of the immigration status of foreign nationals arrested and held in a county or municipal jail; to provide that local governing authorities that have entered or attempted to enter into certain memorandums of agreement with the federal government shall receive additional funding for confinement of state inmates; to provide for a funding contingency; to amend Title 45 of the Official Code of Georgia Annotated, relating to public officers and employees, so as to provide for penalties for failure of agency heads to abide by certain state immigration laws; to amend Chapter 36 of Title 50 of the Official

11                                                                                    HB 87/AP

Code of Georgia Annotated, relating to verification of lawful presence within the United States, so as to provide for identification documents by applicants for public benefits; to enact the "Secure and Verifiable Identity Document Act"; to provide penalties for the failure of an agency head to verify the lawful immigration status of certain applicants for public benefits; to establish the Immigration Enforcement Review Board; to establish a study on the impact of immigration reform on Georgia's agricultural industry within the Department of Agriculture; to provide for related matters; to provide for an effective date and applicability; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

**SECTION 1.**

This Act shall be known and may be cited as the "Illegal Immigration Reform and Enforcement Act of 2011."

**SECTION 2.**

Article 3 of Chapter 10 of Title 13 of the Official Code of Georgia Annotated, relating to security and immigration compliance, is amended by revising Code Section 13-10-90, relating to definitions, as follows:

"13-10-90.

As used in this article, the term:

(1)  'Commissioner' means the Commissioner of ~~the Georgia Department of~~ Labor.

(2)  'Contractor' means a person or entity that enters into a contract for the physical performance of services with a public employer.

~~(2)~~(3)  'Federal work authorization program' means any of the electronic verification of work authorization programs operated by the United States Department of Homeland Security or any equivalent federal work authorization program operated by the United States Department of Homeland Security to verify employment eligibility information of newly hired employees, ~~pursuant to the Immigration Reform and Control Act of 1986 (IRCA), D.L. 99-603~~ commonly known as E-Verify, or any subsequent replacement program.

~~(2.1)~~(4)  'Physical performance of services' means the building, altering, repairing, improving, or demolishing of any public structure or building or other public improvements of any kind to public real property within this state, including the construction, reconstruction, or maintenance of all or part of a public road; or any other performance of labor for a public employer within this state under a contract or other bidding process.

(3)(5) 'Public employer' means every department, agency, or instrumentality of the state or a political subdivision of the state with more than one employee.

(4)(6) 'Subcontractor' means a person or entity having privity of contract with a contractor and includes a subcontractor, contract employee, or staffing agency, or any contractor regardless of its tier.

(7) 'Sub-subcontractor' means a person or entity having privity of contract with a subcontractor or privity of contract with another person or entity contracting with a subcontractor or sub-subcontractor."

### SECTION 3.

Said article is further amended by revising subsections (a) and (b) of Code Section 13-10-91, relating to the verification of new employee eligibility, applicability, and rules and regulations, as follows:

"(a) Every public employer, including, but not limited to, every municipality and county, shall register and participate in the federal work authorization program to verify employment eligibility of all newly hired employees. Upon federal authorization, a public employer shall permanently post the employer's federally issued user identification number and date of authorization, as established by the agreement for authorization, on the employer's website; provided, however, that if a local public employer does not maintain a website, the identification number and date of authorization shall be published annually in the official legal organ for the county. then the local government shall submit such information to the Carl Vinson Institute of Government of the University of Georgia to be posted by the institute on the website created for local government audit and budget reporting. The Carl Vinson Institute of Government of the University of Georgia shall maintain the information submitted and provide instructions and submission guidelines for local governments. State departments, agencies, or instrumentalities may satisfy the requirement of this Code section by posting information required by this Code section on one website maintained and operated by the state.

(b)(1) No A public employer shall not enter into a contract pursuant to this chapter for the physical performance of services within this state unless the contractor registers and participates in the federal work authorization program to verify information of all newly hired employees or subcontractors. Before a bid for any such service is considered by a public employer, the bid shall include a signed, notarized affidavit from the contractor attesting to the following:

(A) The affiant has registered with and, is authorized to use, and uses the federal work authorization program;

(B) The user identification number and date of authorization for the affiant; and

(C)  The affiant ~~is using and~~ will continue to use the federal work authorization program throughout the contract period; and

(D)  The affiant will contract for the physical performance of services in satisfaction of such contract only with subcontractors who present an affidavit to the contractor with the same information required by subparagraphs (A), (B), and (C) of this paragraph.

An affidavit required by this subsection shall be considered an open public record once a public employer has entered into a contract for physical performance of services; provided, however, that any information protected from public disclosure by federal law or by Article 4 of Chapter 18 of Title 50 shall be redacted.  Affidavits shall be maintained by the public employer for five years from the date of receipt.

(2)  A contractor shall not enter into any contract with a public employer for ~~No contractor or subcontractor who enters a contract pursuant to this chapter with a public employer or a contractor of a public employer shall enter into such a contract or subcontract in connection with~~ the physical performance of services ~~within this state~~ unless the contractor ~~or subcontractor~~ registers and participates in the federal work authorization program ~~to verify information of all newly hired employees.  Any employee, contractor, or subcontractor of such contractor or subcontractor shall also be required to satisfy the requirements of this paragraph.~~

~~(3)  Upon contracting with a new subcontractor, a contractor or subcontractor shall, as a condition of any contract or subcontract entered into pursuant to this chapter, provide a public employer with notice of the identity of any and all subsequent subcontractors hired or contracted by that contractor or subcontractor.  Such notice shall be provided within five business days of entering into a contract or agreement for hire with any subcontractor.  Such notice shall include an affidavit from each subsequent contractor attesting to the subcontractor's name, address, user identification number, and date of authorization to use the federal work authorization program.~~

(3)  A subcontractor shall not enter into any contract with a contractor unless such subcontractor registers and participates in the federal work authorization program.  A subcontractor shall submit, at the time of such contract, an affidavit to the contractor in the same manner and with the same information required in paragraph (1) of this subsection.  It shall be the duty of any subcontractor receiving an affidavit from a sub-subcontractor to forward notice to the contractor of the receipt, within five business days of receipt, of such affidavit.  It shall be the duty of a subcontractor receiving notice of receipt of an affidavit from any sub-subcontractor that has contracted with a sub-subcontractor to forward, within five business days of receipt, a copy of such notice to the contractor.

(4) A sub-subcontractor shall not enter into any contract with a subcontractor or sub-subcontractor unless such sub-subcontractor registers and participates in the federal work authorization program. A sub-subcontractor shall submit, at the time of such contract, an affidavit to the subcontractor or sub-subcontractor with whom such sub-subcontractor has privity of contract, in the same manner and with the same information required in paragraph (1) of this subsection. It shall be the duty of any sub-subcontractor to forward notice of receipt of any affidavit from a sub-subcontractor to the subcontractor or sub-subcontractor with whom such receiving sub-subcontractor has privity of contract.

(5) In lieu of the affidavit required by this subsection, a contractor, subcontractor, or sub-subcontractor who has no employees and does not hire or intend to hire employees for purposes of satisfying or completing the terms and conditions of any part or all of the original contract with the public employer shall instead provide a copy of the state issued driver's license or state issued identification card of such contracting party and a copy of the state issued driver's license or identification card of each independent contractor utilized in the satisfaction of part or all of the original contract with a public employer. A driver's license or identification card shall only be accepted in lieu of an affidavit if it is issued by a state within the United States and such state verifies lawful immigration status prior to issuing a driver's license or identification card. For purposes of satisfying the requirements of this subsection, copies of such driver's license or identification card shall be forwarded to the public employer, contractor, subcontractor, or sub-subcontractor in the same manner as an affidavit and notice of receipt of an affidavit as required by paragraphs (1), (3), and (4) of this subsection. Not later than July 1, 2011, the Attorney General shall provide a list of the states that verify immigration status prior to the issuance of a driver's license or identification card and that only issue licenses or identification cards to persons lawfully present in the United States. The list of verified state drivers' licenses and identification cards shall be posted on the website of the State Law Department and updated annually thereafter. In the event that a contractor, subcontractor, or sub-subcontractor later determines that he or she will need to hire employees to satisfy or complete the physical performance of services under an applicable contract, then he or she shall first be required to comply with the affidavit requirements of this subsection.

(6) It shall be the duty of the contractor to submit copies of all affidavits, drivers' licenses, and identification cards required pursuant to this subsection to the public employer within five business days of receipt. No later than August 1, 2011, the Departments of Audits and Accounts shall create and post on its website form affidavits for the federal work authorization program. The affidavits shall require fields for the

following information: the name of the project, the name of the contractor, subcontractor, or sub-subcontractor, the name of the public employer, and the employment eligibility information required pursuant to this subsection.

(7)(A) Not later than December 31 of each year, a public employer shall submit a compliance report to the state auditor certifying compliance with the provisions of this subsection. Such compliance report shall contain the public employer's federal work authorization program verification user number and date of authorization and the legal name, address, and federal work authorization program user number of the contractor and the date of the contract between the contractor and public employer. Subject to available funding, the state auditor shall conduct annual compliance audits on a minimum of at least one-half of the reporting agencies and publish the results of such audits annually on the department's website on or before September 30.

(B) If the state auditor finds a political subdivision to be in violation of this subsection, such political subdivision shall be provided 30 days to demonstrate to the state auditor that such political subdivision has corrected all deficiencies and is in compliance with this subsection. If, after 30 days, the political subdivision has failed to correct all deficiencies, such political subdivision shall be excluded from the list of qualified local governments under Chapter 8 of Title 50 until such time as the political subdivision demonstrates to the state auditor that such political subdivision has corrected all deficiencies and is in compliance with this subsection.

(C)(i) At any time after the state auditor finds a political subdivision to be in violation of this subsection, such political subdivision may seek administrative relief through the Office of State Administrative Hearings. If a political subdivision seeks administrative relief, the time for correcting deficiencies shall be tolled, and any action to exclude the political subdivision from the list of qualified governments under Chapter 8 of Title 50 shall be suspended until such time as a final ruling upholding the findings of the state auditor is issued.

(ii) A new compliance report submitted to the state auditor by the political subdivision shall be deemed satisfactory and shall correct the prior deficient compliance report so long as the new report fully complies with this subsection.

(iii) No political subdivision of this state shall be found to be in violation of this subsection by the state auditor as a result of any actions of a county constitutional officer.

(D) If the state auditor finds any political subdivision which is a state department or agency to be in violation of the provisions of this subsection twice in a five-year period, the funds appropriated to such state department or agency for the fiscal year following the year in which the agency was found to be in violation for the second time shall be

not greater than 90 percent of the amount so appropriated in the second year of such noncompliance. Any political subdivision found to be in violation of the provisions of this subsection shall be listed on www.open.georgia.gov or another official state website with an indication and explanation of each violation.

(4)(8) Contingent upon appropriation or approval of necessary funding and in order to verify compliance with the provisions of this subsection, each year the Commissioner shall conduct no fewer than 100 random audits of public employers and contractors or may conduct such an audit upon reasonable grounds to suspect a violation of this subsection. The results of the audits shall be published on the www.open.georgia.gov website and on the Georgia Department of Labor's website no later than December 31 of each year. The Georgia Department of Labor shall seek funding from the United States Secretary of Labor to the extent such funding is available.

(5)(9) Any person who knowingly and willfully makes a false, fictitious, or fraudulent statement in an affidavit submitted pursuant to this subsection shall be guilty of a violation of Code Section 16-10-20 and, upon conviction, shall be punished as provided in such Code section. Contractors and, subcontractors, sub-subcontractors, and any person convicted for false statements based on a violation of this subsection shall be prohibited from bidding on or entering into any public contract for 12 months following such conviction. A contractor, subcontractor, or sub-subcontractor that has been found by the Commissioner to have violated this subsection shall be listed by the Department of Labor on www.open.georgia.gov or other official website of the state with public information regarding such violation, including the identity of the violator, the nature of the contract, and the date of conviction. A public employee, contractor, subcontractor, or sub-subcontractor shall not be held civilly liable or criminally responsible for unknowingly or unintentionally accepting a bid from or contracting with a contractor, subcontractor, or sub-subcontractor acting in violation of this subsection. Any contractor, subcontractor, or sub-subcontractor found by the Commissioner to have violated this subsection shall, on a second or subsequent violations, be prohibited from bidding on or entering into any public contract for 12 months following the date of such finding.

(10) There shall be a rebuttable presumption that a public employer, contractor, subcontractor, or sub-subcontractor receiving and acting upon an affidavit conforming to the content requirements of this subsection does so in good faith, and such public employer, contractor, subcontractor, or sub-subcontractor may rely upon such affidavit as being true and correct. The affidavit shall be admissible in any court of law for the purpose of establishing such presumption.

(11) Documents required by this Code section may be submitted electronically, provided the submission complies with Chapter 12 of Title 10."

**SECTION 4.**

Title 16 of the Official Code of Georgia Annotated, relating to crimes and offenses, is amended in Article 8 of Chapter 9, relating to identity fraud, by adding a new Code section to read as follows:

"16-9-121.1.

(a) A person commits the offense of aggravated identity fraud when he or she willfully and fraudulently uses any counterfeit or fictitious identifying information concerning a real, fictitious, or deceased person with intent to use such counterfeit or fictitious identifying information for the purpose of obtaining employment.

(b) The offense created by this Code section shall not merge with any other offense."

**SECTION 5.**

Said article of said title is further amended by revising Code Section 16-9-126, relating to penalties for violations, as follows:

"16-9-126.

(a) A violation of this article, other than a violation of Code Section 16-9-121.1 or 16-9-122, shall be punishable by imprisonment for not less than one nor more than ten years or a fine not to exceed $100,000.00, or both. Any person who commits such a violation for the second or any subsequent offense shall be punished by imprisonment for not less than three nor more than 15 years, a fine not to exceed $250,000.00, or both.

(a.1) A violation of Code Section 16-9-121.1 shall be punishable by imprisonment for not less than one nor more than 15 years, a fine not to exceed $250,000.00, or both, and such sentence shall run consecutively to any other sentence which the person has received.

(b) A violation of this article which does not involve the intent to commit theft or appropriation of any property, resource, or other thing of value that is committed by a person who is less than 21 years of age shall be punishable by imprisonment for not less than one nor more than three years or a fine not to exceed $5,000.00, or both.

(c) Any person found guilty of a violation of this article may be ordered by the court to make restitution to any consumer victim or any business victim of such fraud.

(d) Each violation of this article shall constitute a separate offense.

(e) Upon a conviction of a violation of this article, the court may issue any order necessary to correct a public record that contains false information resulting from the actions which resulted in the conviction."

**SECTION 6.**

Said article of said title is further amended by revising Code Section 16-9-128, relating to exemptions, as follows:

"16-9-128.

(a) The prohibitions set forth in Code Sections 16-9-121, 16-9-121.1, and 16-9-122 shall not apply to nor shall any cause of action arise under Code Sections 16-9-129 and 16-9-131 for:

(1) The lawful obtaining of credit information in the course of a bona fide consumer or commercial transaction;

(2) The lawful, good faith exercise of a security interest or a right to offset by a creditor or a financial institution;

(3) The lawful, good faith compliance by any party when required by any warrant, levy, garnishment, attachment, court order, or other judicial or administrative order, decree, or directive; or

(4) The good faith use of identifying information with the permission of the affected person.

(b) The exemptions provided in subsection (a) of this Code section will shall not apply to a person intending to further a scheme to violate Code Section 16-9-121, 16-9-121.1, or 16-9-122.

(c) It is shall not be necessary for the state to negate any exemption or exception in this article in any complaint, accusation, indictment, or other pleading or in any trial, hearing, or other proceeding under this article involving a business victim.  In such cases, the burden of proof of any exemption or exception is upon the business victim claiming it."

## SECTION 7.

Said title is further amended in Chapter 11, relating to offenses against public order and safety, by adding a new article to read as follows:

## "ARTICLE 5

16-11-200.

(a) As used in this Code section, the term:

(1) 'Illegal alien' means a person who is verified by the federal government to be present in the United States in violation of federal immigration law.

(2) 'Motor vehicle' shall have the same meaning as provided in Code Section 40-1-1.

(b) A person who, while committing another criminal offense, knowingly and intentionally transports or moves an illegal alien in a motor vehicle for the purpose of furthering the illegal presence of the alien in the United States shall be guilty of the offense of transporting or moving an illegal alien.

(c)  Except as provided in this subsection, a person convicted for a first offense of transporting or moving an illegal alien who moves seven or fewer illegal aliens at the same time shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment not to exceed 12 months, a fine not to exceed $1,000.00, or both.  A person convicted for a second or subsequent offense of transporting or moving an illegal alien, and a person convicted on a first offense of transporting or moving an illegal alien who moves eight or more illegal aliens at the same time, shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not less than one or more than five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.  A person who commits the offense of transporting or moving an illegal alien who does so with the intent of making a profit or receiving anything of value shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not less than one or more than five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.

(d)  This Code section shall not apply to:

(1)  A government employee transporting or moving an illegal alien as a part of his or her official duties or to any person acting at the direction of such employee;

(2)  A person who transports an illegal alien to or from a judicial or administrative proceeding when such illegal alien is required to appear pursuant to a summons, subpoena, court order, or other legal process;

(3)  A person who transports an illegal alien to a law enforcement agency or a judicial officer for official government purposes;

(4)  An employer transporting an employee who was lawfully hired; or

(5) A person providing privately funded social services.

16-11-201.

(a)  As used in this Code section, the term:

(1)  'Harboring' or 'harbors' means any conduct that tends to substantially help an illegal alien to remain in the United States in violation of federal law but shall not include a person providing services to infants, children, or victims of a crime; a person providing privately funded social services; a person providing emergency medical service; or an attorney or his or her employees for the purpose of representing a criminal defendant.

(2)  'Illegal alien' means a person who is verified by the federal government to be present in the United States in violation of federal immigration law.

(b)  A person who is acting in violation of another criminal offense and who knowingly conceals, harbors, or shields an illegal alien from detection in any place in this state, including any building or means of transportation, when such person knows that the person

being concealed, harbored, or shielded is an illegal alien, shall be guilty of the offense of concealing or harboring an illegal alien.

(c)  Except as provided in this subsection, a person convicted of concealing or harboring an illegal alien who conceals or harbors seven or fewer illegal aliens at the same time in the same location shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment not to exceed 12 months, a fine not to exceed $1,000.00, or both.  A person convicted of concealing or harboring an illegal alien who conceals or harbors eight or more illegal aliens at the same time in the same location, or who conceals or harbors an illegal alien with the intent of making a profit or receiving anything of value, shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not less than one or more than five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.

(d)  This Code section shall not apply to a government employee or any person acting at the express direction of a government employee who conceals, harbors, or shelters an illegal alien when such illegal alien is or has been the victim of a criminal offense or is a witness in any civil or criminal proceeding or who holds an illegal alien in a jail, prison, or other detention facility.

16-11-202.

(a)  As used in this Code section, the term 'illegal alien' means a person who is verified by the federal government to be present in the United States in violation of federal immigration law.

(b)  A person who is acting in violation of another criminal offense and who knowingly induces, entices, or assists an illegal alien to enter into this state, when such person knows that the person being induced, enticed, or assisted to enter into this state is an illegal alien, shall be guilty of the offense of inducing an illegal alien to enter into this state.

(c)  Except as provided in subsection (d) of this Code section, for a first offense, a person convicted of inducing an illegal alien to enter into this state shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment not to exceed 12 months, a fine not to exceed $1,000.00, or both.  For a second or subsequent conviction of inducing an illegal alien to enter into this state, a person shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not less than one or more than five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.

(d)  A person who commits the offense of inducing an illegal alien to enter into this state who does so with the intent of making a profit or receiving any thing of value shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment of not

less than one or more than five years, a fine of not less than $5,000.00 or more than $20,000.00, or both.

16-11-203.

The testimony of any officer, employee, or agent of the federal government having confirmed that a person is an illegal alien shall be admissible to prove that the federal government has verified such person to be present in the United States in violation of federal immigration law.  Verification that a person is present in the United States in violation of federal immigration law may also be established by any document authorized by law to be recorded or filed and in fact recorded or filed in a public office where items of this nature are kept."

## SECTION 8.

Chapter 5 of Title 17 of the Official Code of Georgia Annotated, relating to searches and seizures, is amended by adding a new article to read as follows:

## "ARTICLE 5

17-5-100.

(a)  As used in this Code section, the term:

(1)  'Criminal violation' means a violation of state or federal criminal law but shall not include a violation of a county or municipal law, regulation, or ordinance.

(2)  'Illegal alien' means a person who is verified by the federal government to be present in the United States in violation of federal immigration law.

(b)  Except as provided in subsection (f) of this Code section, during any investigation of a criminal suspect by a peace officer, when such officer has probable cause to believe that a suspect has committed a criminal violation, the officer shall be authorized to seek to verify such suspect's immigration status when the suspect is unable to provide one of the following:

(1)  A secure and verifiable document as defined in Code Section 50-36-2;

(2)  A valid Georgia driver's license;

(3)  A valid Georgia identification card issued by the Department of Driver Services;

(4) If the entity requires proof of legal presence in the United States before issuance, any valid driver's license from a state or district of the United States or any valid identification document issued by the United States federal government;

(5) A document used in compliance with paragraph (2) of subsection (a) of Code Section 40-5-21; or

(6)  Other information as to the suspect's identity that is sufficient to allow the peace officer to independently identify the suspect.

(c)  When attempting to determine the immigration status of a suspect pursuant to subsection (b) of this Code section, a peace officer shall be authorized to use any reasonable means available to determine the immigration status of the suspect, including:

(1)  Use of any authorized federal identification data base;

(2)  Identification methods authorized by federal law, including those authorized by 8 USCA 1373(c), 8 USCA 1644;

(3)  Use of electronic fingerprint readers or similar devices; or

(4)  Contacting an appropriate federal agency.

(d)  A peace officer shall not consider race, color, or national origin in implementing the requirements of this Code section except to the extent permitted by the Constitutions of Georgia and of the United States.

(e)  If during the course of the investigation into such suspect's identity, a peace officer receives verification that such suspect is an illegal alien, then such peace officer may take any action authorized by state and federal law, including, but not limited to, detaining such suspected illegal alien, securely transporting such suspect to any authorized federal or state detention facility, or notifying the United States Department of Homeland Security or successor agency.  Nothing in this Code section shall be construed to hinder or prevent a peace officer or law enforcement agency from arresting or detaining any criminal suspect on other criminal charges.

(f)  No person who in good faith contacts or has contact with a state or local peace officer or prosecuting attorney or member of the staff of a prosecuting attorney for the purpose of acting as a witness to a crime, to report criminal activity, or to seek assistance as a victim to a crime shall have his or her immigration status investigated based on such contact or based on information arising from such contact.

(g)  A peace officer, prosecuting attorney, or government official or employee, acting in good faith to carry out any provision of this Code section, shall have immunity from damages or liability from such actions."

## SECTION 9.

Title 35 of the Official Code of Georgia Annotated, relating to law enforcement officers and agencies, is amended by adding a new Code section to read as follows:

"35-1-16.

(a) It is the intent of the General Assembly to encourage Georgia law enforcement officials to work in conjunction with federal immigration authorities and to utilize all resources

made available by the federal government to assist state and local law enforcement officers in the enforcement of the immigration laws of this state and of the United States.

(b) **Cooperation with federal authorities.**

(1)  To the extent authorized by federal law, state and local government employees, including law enforcement officers and prosecuting attorneys, shall be authorized to send, receive, and maintain information relating to the immigration status of any individual as reasonably needed for public safety purposes.  Except as provided by federal law, such employees shall not be prohibited from receiving or maintaining information relating to the immigration status of any individual or sending or exchanging such information with other federal, state, or local governmental entities or employees for official public safety purposes.

(2)  State and local agencies shall be authorized to enter into memorandum of understandings and agreements with the United States Department of Justice, the Department of Homeland Security, or any other federal agency for the purpose of enforcing federal immigration and customs laws and the detention, removal, and investigation of illegal aliens and the immigration status of any person in this state.  A peace officer acting within the scope of his or her authority under any such memorandum of understanding, agreement, or other authorization from the federal government shall have the power to arrest, with probable cause, any person suspected of being an illegal alien.

(3)  Except as provided by federal law, no state or local agency or department shall be prohibited from utilizing available federal resources, including data bases, equipment, grant funds, training, or participation in incentive programs for any public safety purpose related to the enforcement of state and federal immigration laws.

(4)  When reasonably possible, applicable state agencies shall consider incentive programs and grant funding for the purpose of assisting and encouraging state and local agencies and departments to enter into agreements with federal entities and to utilize federal resources consistent with the provisions of this Code section.

(c) **Authority to transport illegal aliens.**  If a state or local law enforcement officer has verification that a person is an illegal alien, then such officer shall be authorized to securely transport such illegal alien to a federal facility in this state or to any other temporary point of detention and to reasonably detain such illegal alien when authorized by federal law. Nothing in this Code section shall be construed to hinder or prevent a peace officer or law enforcement agency from arresting or detaining any criminal suspect on other criminal charges.

(d) **Authority to arrest illegal aliens.** When authorized by federal law, a state or local law enforcement officer shall be authorized to arrest any person based on such person's status as an illegal alien or for a violation of any federal immigration law.

(e) **Immunity.** A law enforcement officer or government official or employee, acting in good faith to enforce immigration laws pursuant to an agreement with federal authorities to collect or share immigration status information, or to carry out any provision of this Code section, shall have immunity from damages or liability from such actions."

## SECTION 10.

Said title is further amended in Code Section 35-2-14, relating to defining peace officer and the enforcement of immigration and custom laws, by revising subsection (d) as follows:

"(d)  The commissioner shall annually designate ~~appropriate~~ no fewer than ten peace officers to apply to be trained pursuant to the memorandum of understanding provided for in subsections (b) and (c) of this Code section.  Such training shall be funded pursuant to ~~the~~ any federal Homeland Security Appropriation Act ~~of 2006, Public Law 109-90,~~ or any subsequent source of federal funding.  The provisions of this subsection shall become effective upon such funding."

## SECTION 11.

Said title is further amended by adding a new Code section to read as follows:

"35-6A-10.

(a)  Subject to available funding, the council shall establish a grant or incentive program for the provision of funds to local law enforcement agencies as incentive to such agencies to use the federal Department of Homeland Security's Secure Communities initiative or any successor or similar program and shall establish an incentive program and a grant program to offset the costs for local law enforcement agencies to enter into and implement memorandums of agreement with federal agencies under Section 287(g) of the federal Immigration and Nationality Act.  In awarding such grants or incentives, the council shall be authorized to consider and give priority to local areas with the highest crime rates for crimes committed by illegal aliens.

(b)  The council shall:

(1)  Subject to available funding, provide incentive programs and grants to local law enforcement agencies for utilizing federal resources and for entering into agreements with federal agencies for the enforcement of immigration law;

(2)  Provide technical assistance to local governments and agencies for obtaining and qualifying for incentive programs and grant funds to utilize available federal resources

and to enter into and implement such agreements provided for in subsection (a) of this Code section;

(3)   Communicate information regarding the availability of federal resources and agreements provided for in subsection (a) of this Code section and the availability of related incentive programs and grant funds and post such information on the agency's official Internet website;

(4)   Provide technical assistance and information regarding the process for contacting federal agencies, utilizing federal resources, and entering into agreements provided for in subsection (a) of this Code section and post such information on the agency's official Internet website; and

(5)   Support state-wide campaigns and information programs in an effort to encourage every local law enforcement agency in this state to utilize federal resources and enter into agreements for the enforcement of state and federal immigration law."

**SECTION 12.**

Chapter 60 of Title 36 of the Official Code of Georgia Annotated, relating to general provisions applicable to local governments, is amended by revising Code Section 36-60-6, relating to issuance of local business licenses and evidence of state licensure, as follows:

"36-60-6.

(a)   Every private employer with more than ten employees shall register with and utilize the federal work authorization program, as defined by Code Section 13-10-90.   The requirements of this subsection shall be effective on January 1, 2012, as to employers with 500 or more employees, on July 1, 2012, as to employers with 100 or more employees but fewer than 500 employees, and on July 1, 2013, as to employers with more than ten employees but fewer than 100 employees.

(b)   For purposes of this Code section, the term 'employee' shall have the same meaning as set forth in subparagraph (A) of paragraph (1.1) of Code Section 48-13-5, provided that such person is also employed to work not less than 35 hours per week.

(a)(c)  Before any county or municipal corporation issues a business license, occupational tax certificate, or other document required to operate a business to any person engaged in a profession or business required to be licensed by the state under Title 43, the person must shall provide evidence of such licensure to the appropriate agency of the county or municipal corporation that issues business licenses.  No business license, occupational tax certificate, or other document required to operate a business shall be issued to any person subject to licensure under Title 43 without evidence of such licensure being presented.

(d)   Before any county or municipal corporation issues or renews a business license, occupational tax certificate, or other document required to operate a business to any person,

the person shall provide evidence that he or she is authorized to use the federal work authorization program or evidence that the provisions of this Code section do not apply. Evidence of such use shall be in the form of an affidavit as provided by the Attorney General in subsection (f) of this Code section attesting that he or she utilizes the federal work authorization program in accordance with federal regulations or that he or she employs fewer than 11 employees or otherwise does not fall within the requirements of this Code section. Whether an employer is exempt from using the federal work authorization program as required by this Code section shall be determined by the number of employees employed by such employer on January 1 of the year during which the affidavit is submitted. The affidavit shall include the employer's federally assigned employment eligibility verification system user number and the date of authority for use. The requirements of this subsection shall be effective on January 1, 2012, as to employers with 500 or more employees, on July 1, 2012, as to employers with 100 or more employees but fewer than 500 employees, and on July 1, 2013, as to employers with more than ten employees but fewer than 100 employees.

(e)  Beginning December 31, 2012, and annually thereafter, any county or municipal corporation issuing or renewing a business license, occupational tax certificate, or other document required to operate a business shall provide to the Department of Audits and Accounts a report demonstrating that such county or municipality is acting in compliance with the provisions of this Code section. This annual report shall identify each license or certificate issued by the agency in the preceding 12 months and include the name of the person and business issued a license or other document and his or her federally assigned employment eligibility verification system user number as provided in the affidavit submitted at the time of application. Subject to funding, the Department of Audits and Accounts shall annually conduct an audit of no fewer than 20 percent of such reporting agencies.

(f)  In order to assist private businesses and counties and municipal corporations in complying with the provisions of this Code section, the Attorney General shall provide a standardized form affidavit which may be used as acceptable evidence demonstrating use of the federal employment eligibility verification system or that the provisions of subsection (b) of this Code section do not apply to the applicant. The form affidavit shall be posted by the Attorney General on the Department of Law's official website no later than January 1, 2012.

(g)  Once an applicant for a business license, occupational tax certificate, or other document required to operate a business has submitted an affidavit with a federally assigned employment eligibility verification system user number, he or she shall not be authorized to submit a renewal application using a new or different federally assigned

employment eligibility verification system user number, unless accompanied by a sworn document explaining the reason such applicant obtained a new or different federally assigned employment eligibility verification system user number.

(b)(h)  Any person presenting false or misleading evidence of such state licensure shall be guilty of a misdemeanor.  Any government official or employee knowingly acting in violation of this Code section shall be guilty of a misdemeanor; provided, however, that any person who knowingly submits a false or misleading affidavit pursuant to this Code section shall be guilty of submitting a false document in violation of Code Section 16-10-20.  It shall be a defense to a violation of this Code section that such person acted in good faith and made a reasonable attempt to comply with the requirements of this Code section.

(i)  Documents required by this Code section may be submitted electronically, provided the submission complies with Chapter 12 of Title 10.

(j)  The Attorney General shall be authorized to conduct an investigation and bring any criminal or civil action he or she deems necessary to ensure compliance with the provisions of this Code section.  The Attorney General shall provide an employer who is found to have committed a good faith violation of this Code section 30 days to demonstrate to the Attorney General that such employer has come into compliance with this Code section. During the course of any investigation of violations of this Code section, the Attorney General  shall  also  investigate  potential  violations  of  Code  Section  16-9-121.1  by employees that may have led to violations of this Code section."

**SECTION 13.**

Title 42 of the Official Code of Georgia Annotated, relating to penal institutions, is amended by revising Code Section 42-4-14, relating to determination of nationality of a person charged with felony and confined in a jail facility, as follows:

"42-4-14.

(a)  As used in this Code section, the term 'illegal alien' means a person who is verified by the  federal  government  to  be  present  in  the  United  States  in  violation  of  federal immigration law.

(a)(b)  When any person is confined, for any period, in the jail of a county or municipality or a jail operated by a regional jail authority in compliance with Article 36 of the Vienna Convention on Consular Relations, a reasonable effort shall be made to determine the nationality of the person so confined.

(c)(b)  If the prisoner is a foreign national charged with a felony, driving under the influence pursuant to Code Section 40-6-391, driving without being licensed pursuant to subsection (a) of Code Section 40-5-20, or with a misdemeanor of a high and aggravated

nature, the keeper of the jail or other officer shall make When any foreign national is confined, for any period, in a county or municipal jail, a reasonable effort shall be made to verify that the prisoner such foreign national has been lawfully admitted to the United States and if lawfully admitted, that such lawful status has not expired.  If verification of lawful status can not cannot be made from documents in the possession of the prisoner foreign national, verification shall be made within 48 hours through a query to the Law Enforcement Support Center (LESC) of the United States Department of Homeland Security or other office or agency designated for that purpose by the United States Department of Homeland Security by the federal government.  If the prisoner foreign national is determined not to be lawfully admitted to the United States to be an illegal alien, the keeper of the jail or other officer shall notify the United States Department of Homeland Security, or other office or agency designated for notification by the federal government.

(c)(d)  Nothing in this Code section shall be construed to deny a person bond or from being released from confinement when such person is otherwise eligible for release; provided, however, that upon verification that any person confined in a jail is an illegal alien, such person may be detained, arrested, and transported as authorized by state and federal law.

(d)(e)  The Georgia Sheriffs Association shall prepare and issue guidelines and procedures used to comply with the provisions of this Code section."

**SECTION 14.**

Said title is further amended by revising subsection (c) of Code Section 42-5-51, relating to reimbursement of counties for housing certain inmates, as follows:

"(c)  After proper documentation is received from the clerk of the court, the department shall have 15 days to transfer an inmate under sentence to the place of confinement.  If the inmate is not transferred within the 15 days, the department will shall reimburse the county, in a sum not less than $7.50 per day per inmate and in such an amount as may be appropriated for this purpose by the General Assembly, for the cost of the incarceration, commencing 15 days after proper documentation is received by the department from the clerk of the court; provided, however, that, subject to an appropriation of funds, local governing authorities that have entered into memorandums of understanding or agreement or that demonstrate continuous attempts to enter into memorandums of understanding or agreement with the federal government under Section 287(g) of the federal Immigration and Nationality Act shall receive an additional payment in the amount of 10 percent of the established rate paid for reimbursement for the confinement of state inmates in local confinement facilities.  The reimbursement provisions of this Code section shall only apply to payment for the incarceration of felony inmates available for transfer to the department,

except inmates under death sentence awaiting transfer after their initial trial, and shall not apply to inmates who were incarcerated under the custody of the commissioner at the time they were returned to the county jail for trial on additional charges or returned to the county jail for any other purposes, including for the purpose of a new trial."

## SECTION 15.

Title 45 of the Official Code of Georgia Annotated, relating to public officers and employees, is amended by revising Code Section 45-10-28, relating to penalties for a violation of Part 1 of Article 2 of Chapter 10 of Title 45  and civil actions by the Attorney General to collect penalties, as follows:

"45-10-28.

(a)(1)  Any appointed public official or employee who violates Code Section 45-10-22, 45-10-23, 45-10-24, or 45-10-26 shall be subject to:

(A)  Removal from office or employment;

(B)  A civil fine not to exceed $10,000.00; and

(C)  Restitution to the state of any pecuniary benefit received as a result of such violation.

(2) Any elected public official who violates Code Section 45-10-22, 45-10-23, 45-10-24, or 45-10-26 shall be subject to:

(A)  A civil fine not to exceed $10,000.00; and

(B)  Restitution to the state of any pecuniary benefit received as a result of such violation.

(3)  Any business which violates Code Section 45-10-22, 45-10-23, 45-10-24, or 45-10-26 shall be subject to:

(A)  A civil fine not to exceed $10,000.00; and

(B)  Restitution to the state of any pecuniary benefit received as a result of such violation.

(b)  The penalties provided for in subsection (a) of this Code section may be imposed in any civil action brought for that purpose, and such actions shall be brought by the Attorney General.

(c)  As used in this subsection, the term 'agency head' shall have the same meaning as set forth in Code Section 50-36-1.  Any public official, agency head, or employee who violates Code Section 13-10-91 or 50-36-1 shall be subject to:

(A)  A civil fine not to exceed $10,000.00;

(B)  Restitution to the state or local government, whichever is applicable, of any pecuniary benefit received as a result of such violation; and

(C)  Where such violation is committed knowingly and intentionally, removal from office or employment."


## SECTION 16.

Chapter 36 of Title 50 of the Official Code of Georgia Annotated, relating to verification of lawful presence within the United States, is amended by revising subsection (a) of Code Section 50-36-1, relating to verification of lawful presence within the United States for receipt of certain government benefits, by renumbering paragraphs (1) through (3) as paragraphs (2) through (4), respectively, and by adding a new paragraph (1) to read as follows:

"(1) 'Agency head' means a director, commissioner, chairperson, mayor, councilmember, board member, sheriff, or other executive official, whether appointed or elected, responsible for establishing policy for a public employer."


## SECTION 17.

Said Code section of said chapter is further amended by revising subsection (e) as follows:

"(e)  An agency or political subdivision providing or administering a public benefit shall require every applicant for such benefit to:

(1)  Provide at least one secure and verifiable document, as defined in Code Section 50-36-2;

(2)  Execute execute a signed and sworn affidavit verifying the applicant's lawful presence in the United States, which affidavit shall state:

(1)(A)  The applicant is a United States citizen or legal permanent resident 18 years of age or older; or

(2)(B)   The applicant is a qualified alien or nonimmigrant under the federal Immigration and Nationality Act, Title 8 U.S.C., as amended, 18 years of age or older lawfully present in the United States and provide the applicant's alien number issued by the Department of Homeland Security or other federal immigration agency; and

(3) The state auditor shall create affidavits for use under this Code section and shall keep a current version of such affidavits on the Department of Audits and Account's official website.

(4) Documents required by this Code section may be submitted electronically, provided the submission complies with Chapter 12 of Title 10."


## SECTION 18.

Said Code section of said chapter is further amended by revising subsection (o) as follows:

″(o)  No employer, agency, or political subdivision shall be subject to lawsuit or liability arising from any act to comply with the requirements of this chapter; provided, however, that the intentional and knowing failure of any agency head to abide by the provisions of this chapter shall:

(1)  Be a violation of the code of ethics for government service established in Code Section 45-10-1 and subject such agency head to the penalties provided for in Code Section 45-10-28, including removal from office and a fine not to exceed $10,000.00; and

(2)  Be a high and aggravated misdemeanor offense where such agency head acts to willfully violate the provisions of this Code section or acts so as to intentionally and deliberately interfere with the implementation of the requirements of this Code section. The Attorney General shall have the authority to conduct a criminal and civil investigation of an alleged violation of this chapter by an agency or agency head and to bring a prosecution or civil action against an agency or agency head for all cases of violations under this chapter.  In the event that an order is entered against an employer, the state shall be awarded attorney's fees and expenses of litigation incurred in bringing such an action and investigating such violation.″

**SECTION 19.**

Said chapter is further amended by adding a new Code section to read as follows:

″50-36-2.

(a)  This Code section shall be known and may be cited as the 'Secure and Verifiable Identity Document Act.'

(b)  As used in this Code section, the term:

(1)  'Agency or political subdivision' means any department, agency, authority, commission, or government entity of this state or any subdivision of this state.

(2) 'Public official' means an elected or appointed official or an employee or an agent of an agency or political subdivision.

(3)  'Secure and verifiable document' means a document issued by a state or federal jurisdiction or recognized by the United States government and that is verifiable by federal or state law enforcement, intelligence, or homeland security agencies.  Secure and verifiable document shall not mean a Matricula Consular de Alta Seguridad, matricula consular card, consular matriculation card, consular identification card, or similar identification card issued by a foreign government regardless of the holder's immigration status.  Only those documents approved and posted by the Attorney General pursuant to subsection (f) of this Code section shall be considered secure and verifiable documents.

(c)  Unless required by federal law, on or after January 1, 2012, no agency or political subdivision shall accept, rely upon, or utilize an identification document for any official

purpose that requires the presentation of identification by such agency or political subdivision or by federal or state law unless it is a secure and verifiable document.

(d)  Any person acting in willful violation of this Code section by knowingly accepting identification documents that are not secure and verifiable documents shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment not to exceed 12 months, a fine not to exceed $1,000.00, or both.

(e)  This Code section shall not apply to:

(1)  A person reporting a crime;

(2)  An agency official accepting a crime report, conducting a criminal investigation, or assisting a foreign national to obtain a temporary protective order;

(3)  A person providing services to infants, children, or victims of a crime;

(4)  A person providing emergency medical service;

(5)  A peace officer in the performance of the officer's official duties and within the scope of his or her employment;

(6)  Instances when a federal law mandates acceptance of a document;

(7)  A court, court official, or traffic violation bureau for the purpose of enforcing a citation, accusation, or indictment;

(8)  Paragraph (2) of subsection (a) of Code Section 40-5-21 or paragraph (2) of subsection (a) of Code Section 40-5-21.1; or

(9)  An attorney or his or her employees for the purpose of representing a criminal defendant.

(f)  Not later than August 1, 2011, the Attorney General shall provide and make public on the Department of Law's website a list of acceptable secure and verifiable documents.  The list shall be reviewed and updated annually by the Attorney General."

**SECTION 20**.

Said chapter is further amended by adding a new Code section to read as follows:

"50-36-3.

(a)  As used in this Code section, the term:

(1)  'Board' means the Immigration Enforcement Review Board.

(2)  'Public agency or employee' means any government, department, commission, committee, authority, board, or bureau of this state or any political subdivision of this state and any employee or official, whether appointed, elected, or otherwise employed by such a governmental entity.

(3)  'Served' or 'service' means delivery by certified mail or statutory overnight delivery, return receipt requested.

(b)  The Immigration Enforcement Review Board is established and shall consist of seven members.  Three members shall be appointed by the Governor, two members shall be appointed by the Lieutenant Governor, and two members shall be appointed by the Speaker of the House of Representatives.  A chairperson shall be selected by a majority vote of the members.  All matters before the board shall be determined by a majority vote of qualified board members.  Members shall be appointed for terms of two years and shall continue to hold such position until their successors are duly appointed and qualified.  A member may be reappointed to an additional term.  If a vacancy occurs in the membership of the board, the appropriate appointing party shall appoint a successor for the remainder of the unexpired term and until a successor is appointed and qualified.

(c)  The board shall be attached to the Department of Audits and Accounting for administrative purposes.  The members of the board shall receive no compensation for their services but shall be reimbursed for any expenses incurred in connection with the investigation and review of complaints from funds of the board appropriated to the Department of Audits and Accounting for such purposes.

(d)  The Immigration Enforcement Review Board shall have the following duties:

(1)  To conduct a review or investigation of any complaint properly filed with the board;

(2)  To take such remedial action deemed appropriate in response to complaints filed with the board, including holding hearings and considering evidence;

(3)  To make and adopt rules and regulations consistent with the provisions of this Code section; and

(4)  To subpoena relevant documents and witnesses and to place witnesses under oath for the provision of testimony in matters before the board.

(e)  The board shall have the authority to investigate and review any complaint with respect to all actions of a public agency or employee alleged to have violated or failed to properly enforce the provisions of Code Section 13-10-91, 36-80-23, or 50-36-1 with which such public agency or employee was required to comply.  Complaints may be received from any legal resident of this state as defined by Code Section 40-2-1 who is also a legally registered voter.  The method and grounds for filing a complaint shall be posted on the Department of Audits and Accounting's website.

(f)  The board shall meet at a minimum of once every three months and shall send a notice to all interested parties of the places and times of its meetings.  The board shall issue a written report of its findings in all complaints which shall include such evaluations, judgments, and recommendations as it deems appropriate.

(g)  The initial review or hearing may, as determined by the board, be conducted by the full board or by one or more board members.  Such review panel or members shall make findings and issue an initial decision.  The initial decision shall be served upon the

complaining party and the applicable public agency or employee that is the subject of a complaint within 60 calendar days. If the findings are adverse to the public agency or employee, or both, such party shall have 30 days to take the necessary remedial action, if any, and show cause why sanctions should not be imposed.

(h)  In the event that the remedial action does not occur to the satisfaction of the review panel or members, the reviewing panel or members shall make a recommendation specifying an appropriate sanction. Sanctions may include revocation of qualified local government status, loss of state appropriated funds, and a monetary fine of not less than $1,000.00 or more than $5,000.00. Sanctions shall only be imposed against an individual employee or official where there is a finding supported by a preponderance of the evidence that such individual knowingly and willfully violated or failed to abide by the provisions of Code Section 13-10-91, 36-80-23, or 50-36-1.

(i)  The initial decision or recommendation for sanctions, or both, shall be served upon the complaining party and the applicable public agency or employee that is the subject of a complaint. Where an initial decision is made by fewer than the entire board, the decision may be appealed to the full board. Appeals shall be filed with the board not later than 30 days following the recommendation for sanctions, or 30 days following the initial decision, if no adverse findings were made. Appeals may be made by the complainant or sanctioned public agency or employee. The full board shall by majority vote affirm, overturn, or modify the initial decision. The board may conduct a further hearing on the matter, or make a final decision based on the record from any previously held hearing by the original reviewing panel or members, or determine that no action is necessary based on the information before the board. Where the initial decision or recommendation is made by the full board, such decision shall be the final decision of the board following 30 days after service on the public agency or employee, unless further action is taken by the board prior to the expiration of the 30 day period.

(j)  When a public agency or employee fails to take the specified remedial action, the Attorney General shall be authorized to bring a civil mandamus action against such public agency or employee to enforce compliance with applicable law and the sanctions recommended by the board. Nothing contained in this Code section shall prohibit the Attorney General from seeking any other remedy available by law."

## SECTION 20.1.

WHEREAS, Georgia's agricultural industry is a vital pillar for this state's economy and essential to the quality of life enjoyed by all Georgians; and

11                                                                                      HB 87/AP

WHEREAS, understanding the impact of immigration reform measures on Georgia's important agricultural industry is a fundamental key to the implementation of immigration reform in a manner that is in the best interests of this state; and

WHEREAS, the General Assembly recognizes that the federal guest worker program, designated the H-2A visa program, for temporary and seasonal agriculture immigrant workers is administratively cumbersome and flawed; and

WHEREAS, both Georgia and federal law fail to address many of the legal, economic, and security aspects of immigration issues facing our state and especially our agricultural industry; and

WHEREAS, these issues of great importance to the economy and of this state have not before received extensive study by the Georgia General Assembly and merit such detailed and specialized consideration at this time.

NOW, THEREFORE, BE IT RESOLVED BY THE GENERAL ASSEMBLY OF GEORGIA that the Department of Agriculture is directed to conduct a study of the conditions, needs, issues, and problems mentioned above or related thereto and recommend any actions or legislation that the department deems necessary or appropriate. The Department of Agriculture shall consider the current and future impact of immigration on the state agricultural industry. The department shall work in conjunction with and collect expert testimony and information from the United States Department of Agriculture, the Department of Justice, and other state governments. The department shall specifically address the need for reform of the federal H-2A program and provide recommendations for such federal reform. In addition, the department shall recommend changes needed in Georgia to provide for improvements in the H-2A process, identify where such action may be taken by the state, and provide a report evaluating the legal and economic feasibility of implementing a state guest worker program. The department may conduct such meetings at such places and at such times as it may deem necessary or convenient to enable it to exercise fully and effectively its powers, perform its duties, and accomplish the objectives and purposes of this resolution. The Department of Agriculture shall make a final written report to the Governor, the President of the Senate, and the Speaker of the House of Representatives not later than January 1, 2012. Provided that the provisions of this Act have been complied with, the department shall not have any further obligation to continue such study on or after January 1, 2012.

11                                                                                   HB 87/AP

**SECTION 21.**

(a)  If any provision or part of any provision of this Act or the application of the same is held invalid or unconstitutional, the invalidity shall not affect the other provisions or applications of this Act or any other part of this Act than can be given effect without the invalid provision or application, and to this end, the provisions of this Act are severable.

(b)  The terms of this Act regarding immigration shall be construed to have the meanings consistent with such terms under federal immigration law.

(c)  The provisions of this Act shall be implemented in a manner consistent with federal laws governing immigration and civil rights.

**SECTION 22.**

Section 17 of this Act shall become effective on January 1, 2012.  The remaining sections of this Act shall become effective on July 1, 2011.  Except as otherwise expressly provided, the sections of this Act shall apply to offenses and violations occurring on or after their respective effective dates.

**SECTION 23.**

All laws and parts of laws in conflict with this Act are repealed.