Rebecca Sharpless
   (*Pro hac vice* motion forthcoming)
Florida Bar No. 0131024
Farrin Anello
   (*Pro hac vice* motion forthcoming)
New York Bar No. 4403952
Immigration Clinic
University of Miami School of Law
1311 Miller Drive, E273
Coral Gables, FL 33146
(305) 284-3576
(305) 284-6092, clinic

Socheat Chea
Georgia Bar No. 122212
Socheat Chea, P.C.
3500 Duluth Park Ln, Bldg. 300
Duluth, GA 30096
(770) 623-8880

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| Georgia Latino Alliance for Human Rights, *et al.*, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No. 1:11-cv-1804-TWT |
| Governor Nathan Deal, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION...............................................................................................1

STATEMENT OF INTEREST OF *AMICI CURIAE*..................................................4

ARGUMENT......................................................................................................5

    I.    BECAUSE GEORGIA LAW CRIMINALIZES MINOR OFFENSES SUCH AS TRAFFIC INFRACTIONS, HB 87 WILL CONVERT ROUTINE LAW ENFORCEMENT ENCOUNTERS INTO PROLONGED AND INTRUSIVE CUSTODIAL INTERROGATIONS REGARDING IMMIGRATION STATUS................................................7

    II.    HB 87 INCORRECTLY ASSUMES THAT THERE IS A CLEAR ILLEGAL/LEGAL DISTINCTION AND THAT CITIZENSHIP AND IMMIGRATION STATUS IS READILY ASCERTAINABLE...................................................................................8

    III.    THE ENUMERATED IDENTIFICATION DOCUMENTS IN HB 87 SECTION 8 FAIL TO CORRESPOND TO LAWFUL IMMIGRATION STATUS AND THEREFORE DO NOT SIGNIFICANTLY LIMIT CIVIL IMMIGRATION ENFORCEMENT ACTIONS BY GEORGIA POLICE.............................................................................15

CERTIFICATE OF COMPLIANCE.................................................................20

CERTIFICATE OF SERVICE.........................................................................21

## TABLE OF AUTHORITIES

**Cases**

*American Baptist Churches v. Thornburgh,* 760 F. Supp. 796 (N.D. Cal. 1991)...12

*DeCanas v. Bica*, 424 U.S. 351, 354 (1976)..............................................................2

*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).........................................................3

*Matter of Rivera*, 21 I&N Dec. 232 (BIA 1996)....................................................11

*Matter of Rodriguez-Tejedor*, 23 I. & N. Dec. 153 (BIA 2001).............................14

*Miller v. Albright,* 523 U.S. 420, 429-30 (1998)....................................................14

*Nken v. Holder*, 129 S.Ct. 1749, 1756–57 (2009)..................................................11

*Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990).................11

*United States of America v. State of Arizona*, __F.3d__, 2011 WL 1346945 (9th

   Cir. Apr. 11, 2011)..............................................................................................2

*Zadvydas v. Davis,* 533 U.S. 678 (2001).................................................................9

**Statutes and Regulations**

8 C.F.R. §214.14(c)(5)(i).......................................................................................10

8 C.F.R. § 264.1(a)................................................................................................18

8 C.F.R. § 264.1(b)................................................................................................18

8 C.F.R. § 1241.8(d)..............................................................................................12

8 U.S.C. § 1101(a)(27)(J)..................................................................................10

8 U.S.C. §1101(a)(47)......................................................................................11

8 U.S.C. § 1182(a)(9)(B)..............................................................................8 n.4

8 U.S.C. § 1182(a)(9)(C)..............................................................................8 n.4

8 U.S.C. § 1229a..............................................................................................11

8 U.S.C. §1231(c)(2)........................................................................................11

8 U.S.C. §1252c............................................................................................2 n.1

8 U.S.C. § 1324(c)........................................................................................2 n.1

8 U.S.C. § 1357(a)(2)....................................................................................3 n.2

8 U.S.C. §1357(g)(1)..........................................................................................2

8 U.S.C. § 1401................................................................................................14

8 U.S.C. § 1401(g)............................................................................................14

8 U.S.C. § 1409................................................................................................14

8 U.S.C. § 1431(a)............................................................................................14

8 U.S.C. § 1431(b)............................................................................................14

8 U.S.C.A. § 1373(c)...........................................................................................4

8 U.S.C.A. § 1644...............................................................................................4

Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (Oct. 30,
    2001)..........................................................................................................15

N.M. Stat. Ann. § 66-5-9(B) (1978)............................................................17 n.8

N.M. Code R. § 18.19.5.12(D)....................................................................17 n.8

O.C.G.A. § 16-11-202(d)....................................................................................4

O.C.G.A. § 17-5-100......................................................................................1, 3

O.C.G.A. § 17-5-100(a)(2)..............................................................................8, 12

O.C.G.A. § 17-5-100(b)................................................................................3

O.C.G.A. § 17-5-100(b)(1).....................................................................15, 16

O.C.G.A. § 17-5-100(b)(2).....................................................................15, 16

O.C.G.A. § 17-5-100(b)(3).....................................................................15, 16

O.C.G.A. § 17-5-100(b)(4).....................................................................15, 16

O.C.G.A. § 17-5-100(b)(5).....................................................................15, 16

O.C.G.A. § 17-5-100(c)..............................................................................13

O.C.G.A. § 17-5-100(e)...............................................................................4

O.C.G.A. § 17-5-100(f)..............................................................................10

O.C.G.A. § 40-2-8...............................................................................7 n.3

O.C.G.A. § 40-6-42..............................................................................7 n.3

O.C.G.A. § 40-6-43..............................................................................7 n.3

O.C.G.A. § 40-6-49..............................................................................7 n.3

O.C.G.A. § 40-6-50..............................................................................7 n.3

O.C.G.A. § 40-6-92..............................................................................7 n.3

O.C.G.A. § 40-6-124............................................................................7 n.3

O.C.G.A. § 40-6-181............................................................................7 n.3

Wash. Rev. Code 46.20.035(3)..............................................................17 n.8

**Other Authorities**

Defendant's Memorandum In Support of Motion to Dismiss (No. 1:11-cv-
      01804)......................................................................................7-8

*Denial of Driver's Licenses to Many Immigrants Voided*, The New York Times,
      May 11, 2005.................................................................................17

Donald Neufeld, Lori Scialabba, and Pearl Chang, *Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212 (a)(9)(B)(i) and 212(a)(9)(C)(i)(I)* (May 6, 2009)..................................................................8 n.4

ICE Law Enforcement Service Center (LESC) Training Manual...........................12

*Lawful Immigrants Sue Massachusetts RMV for Wrongful Denial of Driver's Licenses*, December 15, 2006........................................................................17-18

Memo, INS, Pearson HQASY120/12/11 (Feb. 23, 2001), reprinted in 78 No. 9 Interpreter Releases 444, 455–64 (Mar. 5, 2001)...............................................12

U.S. Const. Amend. XIV, § 1.............................................................................14

U.S. Department of State Bureau of Consular Affairs, *Passport Statistics*.......16 n.7

## INTRODUCTION

The American Immigration Lawyers Association (AILA) writes as *Amicus Curiae* to demonstrate how Section 8 of the Illegal Immigration Reform and Enforcement Act of 2011 (HB 87) substitutes oversimplified state immigration classifications for the complex federal immigration scheme and permits Georgia police officers to make highly discretionary judgment calls during routine law enforcement encounters about who they should detain for alleged civil immigration violations.  HB 87 (1) uses the phrases "illegal alien" and "present . . . in violation of federal immigration law," neither of which are found in the federal immigration scheme; (2) ignores the fact that it will frequently involve a judgment call to determine whether or not a person falls into these state-created categories; and (3) fails to recognize that identification documents cannot accurately operate as proxies for citizenship and immigration status.

Georgia's immigration enforcement scheme grants sweeping and unchecked authority to state and local police officers, invites invidious profiling based on race, ethnic appearance, or language, and will result in prolonged and illegal detentions of United States citizens and noncitizens with permission to be in the United States.  O.C.G.A. § 17-5-100.  HB 87 usurps Congress's power to regulate

1

immigration and conflicts with federal immigration law.  Like the immigration enforcement laws enacted by Arizona and struck down as unconstitutional by the Ninth Circuit Court of Appeals, HR 87 is preempted by federal law, which exclusively governs the regulation of immigration.  *DeCanas v. Bica*, 424 U.S. 351, 354 (1976) (regulation of immigration is exclusively federal); *United States of America v. State of Arizona*, __F.3d__, 2011 WL 1346945 (9th Cir. Apr. 11, 2011). HB 87 is additionally preempted because it conflicts with current federal law.  The federal government has delegated the authority to enforce specified *criminal* immigration provisions to state authorities under 8 U.S.C. §§ 1252c and 1324(c),[1] but has permitted state police officers to make arrests for *civil* immigration violations only when the particular officers have been deputized and trained pursuant to 8 U.S.C. §1357(g)(1) and are acting under the direct supervision of federal immigration officers.  HB 87 directly conflicts with federal law by purporting to allow *all* local and state police officers to investigate, detain, and transport people suspected of violating civil federal immigration law and by creating new criminal immigration violations.  It further conflicts by requiring that

---

[1]  Under 8 U.S.C. § 1252c, state and local officers may arrest and detain a noncitizen for the federal crime of illegal reentry by a felon who had been deported if the federal government provides "appropriate confirmation" of the person's status.  Under 8 U.S.C. § 1324(c), state and local officers can make arrests for the federal immigration crimes of transporting, smuggling, or harboring certain noncitizens.

everyone, United States citizens and noncitizens alike, carry certain forms of identification in order to avoid being subjects of an immigration investigation and by authorizing warrantless immigration arrests under circumstances more expansive than federal law.[2] HR 87 also creates impermissible "obstacles" to the effective implementation of federal immigration enforcement by placing a tremendous burden on the federal government to respond to time-consuming and often unanswerable requests. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

Under Section 8 of HB 87, any "peace officer" is authorized to "verify" the immigration status of anyone suspected of a violation of Georgia or federal criminal law and has authority to detain, arrest, and transport suspected "illegal alien[s]." O.C.G.A. § 17-5-100. Georgia's state immigration investigation proceeds in three steps. First, the officer asks a suspected individual for identification. Second, if the person is unable to produce the identification specified in § 17-5-100(b), the officer is "authorized to use any reasonable means available to determine the immigration status of the suspect." These means include but are not limited to:

---

[2] Under federal law, federal officers can only execute a warrantless arrest if they find that a suspected immigration violator is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). Georgia's law contains no such limitation.

"(1) Use of any authorized federal identification data base," "(2) Identification methods authorized by federal law, including those authorized by 8 USCA 1373(c), 8 USCA 1644," "(3) Use of electronic fingerprint readers or similar devices," and "(4) Contacting an appropriate federal agency."

Section 8, O.C.G.A. § 16-11-202(d). Third, if the officer believes that he or she has "received verification that such suspect is an illegal alien," the officer can make a warrantless arrest for a suspected civil immigration violation. Specifically, the officer can

take any action authorized by state and federal law, including, but not limited to, detaining such suspected illegal alien, securely transporting such suspect to any authorized federal or state detention facility, or notifying the United States Department of Homeland Security or successor agency.

Section 8, O.C.G.A. § 17-5-100(e).

As the analysis below shows, Section 8 of HB 87 will result in numerous erroneous detentions and arrests solely for suspected civil immigration violations. Georgia police officers will detain and arrest United States citizens and noncitizens with permission to be in the United States.

### STATEMENT OF INTEREST OF *AMICI CURIAE*

AILA is a national association with more than 12,000 members throughout the United States. Members include lawyers and law school professors who

practice and teach in the field of immigration and nationality law. AILA seeks to advance the administration of law pertaining to immigration, nationality and naturalization; to cultivate the jurisprudence of the immigration laws; and to facilitate the administration of justice and elevate the standard of integrity, honor and courtesy of those appearing in a representative capacity in immigration and naturalization matters. AILA's members practice regularly before the United States Citizenship and Immigration Services and the Executive Office for Immigration Review as well as before the United States District Courts, Courts of Appeals, and the Supreme Court of the United States.

## ARGUMENT

HB 87, like other recent state immigration enforcement schemes, is based on the assumption that law enforcement officials can quickly and accurately ascertain citizenship or immigration status.  This assumption is incorrect.  There is no general federal definition of "illegal alien" or unlawful presence.  The varieties of immigration status are numerous and include categories of individuals who have technically violated the immigration law but who are nonetheless present with the permission of the United States, as well as many people who are awaiting adjudication of their removability or claims to asylum or other relief from removal.

Although Section 8 of HB 87 creates a list of identification documents that are deemed to create a presumption of lawful presence, these documents do not sufficiently correlate to a person's citizenship or immigration status. Entire categories of United States citizens and noncitizens with permission to remain in the United States are unlikely to have the enumerated identification documents and therefore will be subjected to interrogation and detention. The law's requirement that police officers "verify" with the federal government that a person is an "illegal alien" provides little limitation on police authority because (1) there is no general definition of "illegal alien" or being present in "violation" of immigration law; (2) whether or not someone is present in violation of immigration law is complex and time-consuming even for federal officers; and (3) Section 8 provides officers with wide discretion to determine when the federal government can be considered to have "verified" illegal status. Nothing in HB 87 requires that a police officer communicate with federal immigration authorities before making this determination. As such, HB 87 invites police officers to make determinations based on race, ethnic appearance, or language, notwithstanding the law's prohibition of invidious discrimination. HB 87 will result in illegal and prolonged detentions of United States citizens and noncitizens whom the federal government

6

has chosen not to deport in accordance with its mandate to balance enforcement against other interests.

## I.    BECAUSE GEORGIA LAW CRIMINALIZES MINOR OFFENSES SUCH AS TRAFFIC INFRACTIONS, HB 87 WILL CONVERT ROUTINE LAW ENFORCEMENT ENCOUNTERS INTO PROLONGED AND INTRUSIVE CUSTODIAL INTERROGATIONS REGARDING IMMIGRATION STATUS.

Because Georgia law criminalizes minor offenses such as traffic infractions, HB 87 will convert routine encounters by state and local police into intrusive and prolonged custodial interrogations.  Georgia police officers will *not* be simply piggy-backing immigration detention onto criminal detention but will be detaining people solely for immigration purposes.  Although Section 8 authorizes police to commence a civil immigration investigation only when they have probable cause that someone has committed a crime, this requirement will not limit the reach of the law because Georgia's criminal code includes a wide range of minor offenses that would normally not lead to detention or arrest.  Under Georgia law, infractions such as speeding, failing to signal, or jaywalking are violations of the criminal code justifying a police stop.[3]  As recognized by Defendants, "the State of Georgia has codified its traffic code with Title 40 of its official code."    Defendant's

---

[3] *See, e.g.*, O.C.G.A. §§ 40-2-8 (expired tag); -6-42 (improper passing on left); -43 (overtaking/passing on right); -49 (following too closely); -50 (crossing gore);  -92 (jay walking); -124 (fail to use signals, hand, arm or signal lights); -181 (speeding).

7

Memorandum In Support of Motion to Dismiss at 40, n. 9.  As a result, Section 8

broadly authorizes police officers to conduct civil immigration investigations on

virtually anyone they encounter in their capacity as law enforcement officers.

## II.    HB 87 INCORRECTLY ASSUMES THAT THERE IS A CLEAR ILLEGAL/LEGAL DISTINCTION AND THAT CITIZENSHIP AND IMMIGRATION STATUS IS READILY ASCERTAINABLE.

Section 8 of HB 87 defines "illegal alien" as someone "who is verified by

the federal government to be present in the United States in violation of federal

immigration law."  O.C.G.A. § 17-5-100(a)(2).  The law assumes that there are

clearly defined "legal" and "illegal" categories and that the federal government can

easily verify whether a person falls into one or the other.  Both assumptions are

incorrect.  Immigration law contains no general definition of legal/illegal status or

lawful/unlawful presence.[4]  Nor do federal immigration authorities categorize

people in these binary terms.  Rather, immigration law consists of a complex web

---

[4]  The Georgia law's reference to "presen[ce] … in violation of federal immigration law" does not align with federal law because this concept has no statutory counterpart in the Immigration and Nationality Act. Although the terms "unlawful presence" and "unlawfully present" are found in 8 U.S.C. § 1182(a)(9)(B) and (C), two specific grounds of inadmissibility to the United States, this term is limited to these contexts and is not a term of general application in the Immigration and Nationality Act.  Adjudication of "unlawful presence" for admissibility purposes occurs within the context of a formal adjudication by an immigration judge or examiner within United States Citizenship and Immigration Services.  Moreover, some noncitizens are deemed to be accruing "unlawful presence" even though they have permission to work or live in the United States.  Conversely, not every noncitizen who is likely to be found deportable due to lack of immigration status accrues unlawful presence under 8 U.S.C. § 1182(a)(9)(B) or (C). *See* Donald Neufeld, Lori Scialabba, and Pearl Chang, *Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212 (a)(9)(B)(i) and 212(a)(9)(C)(i)(I)* (May 6, 2009) at 9-12, *available at* http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/revision_redesign_AFM.PDF.

of various types of status, ranging from lawful permanent residents ("green card" holders) to people with final orders of removal who nevertheless are authorized to be in the United States under supervision. Many foreign-born individuals fall neither within nor without the category "present in the United States in violation of federal immigration law."[5] These include people who may have derived or acquired United States citizenship through an American parent or parents; people with pending removal proceedings or appeals; people who have been ordered deported but who have been granted deferral of removal under the Convention Against Torture or withholding of removal due to the probability of persecution if they were to return to their countries of origin; people who could be or have been ordered deported but have been granted deferred action (a form of prosecutorial discretion); persons subject to final orders of removal who cannot be deported because their countries of origin refuse to repatriate them or because they are stateless;[6] immigrant victims of domestic violence, crime, or severe forms of human trafficking and others with pending petitions for status from U.S. Citizenship and Immigration Services; and certain immigrant juveniles who may

---

[5] The ambiguities of these categories are described in greater detail below.
[6] *See Zadvydas v. Davis,* 533 U.S. 678 (2001).

be entitled to remain permanently in the United States as "special immigrant juveniles." 8 U.S.C. § 1101(a)(27)(J).

In light of the lack of a federal definition of "illegal alien" or "present . . . in violation of federal immigration law," HB 87 also presents an acute problem for particularly vulnerable groups of noncitizens. Congress has authorized visas or lawful status for crime victims in return for their cooperation with law enforcement in attempts to prosecute the perpetrator. A person may qualify for the U-visa or status even if he or she has committed an aggravated felony offense or has an outstanding order of removal. *See* 8 C.F.R. § 214.14(c)(5)(i). Because of the ambiguity of whether a pending U-visa application takes someone out of the "illegal alien" category, HB 87 could authorize the detention of U-visa applicants in direct contravention of Congress's intent to protect victims of crime and to encourage them to report crimes and cooperate with police. Section 8's prohibition of immigration investigations when people report a crime or seek assistance as crime victims places *no* limits on investigations that occur during routine law enforcement encounters. O.C.G.A. § 17-5-100(f).

The cases of noncitizens in removal proceedings are particularly complex. There are many reasons why noncitizens ordered removed by an immigration

judge are *not* subject to deportation.  The order may be on appeal with the Board of Immigration Appeals (BIA) and not yet be final. *See* 8 U.S.C. §1101(a)(47) (explaining that an order becomes final upon decision by the BIA or where the time to seek BIA review lapses). Or it may be the subject of a stay by a federal court of appeals during a petition for review. *See Nken v. Holder*, 129 S.Ct. 1749, 1756–57 (2009) (describing federal court authority to grant a stay).  A federal district court may have issued a writ of habeas corpus or granted a temporary restraining order or a preliminary injunction, preventing the execution of a removal order. *See, e.g.*, *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (explaining that district courts have broad discretionary power to fashion equitable relief).  The BIA or an immigration judge may have granted a stay of removal pending review of a motion to reopen or motion to reconsider. *See 8 U.S.C.* § 1229a (explaining that the filing of a motion to reopen for exceptional circumstances stays deportation until the immigration judge rules); *Matter of Rivera*, 21 I&N Dec. 232 (BIA 1996) (deportation will be automatically stayed until the BIA rules on an appeal).  The U.S. Attorney General may have granted a stay of removal for an individual who is needed as a witness in a prosecution or whose removal is otherwise not practicable or proper.  *See* 8 U.S.C.

11

§1231(c)(2).

Other noncitizens with removal orders may be protected against deportation in part by binding agreements sanctioned by federal courts, such as the settlement reached in *American Baptist Churches v. Thornburgh,* 760 F. Supp. 796 (N.D. Cal. 1991) (ABC Agreement). The ABC agreement is just one example of agreements struck in federal courts that bind federal agencies from deporting certain aliens with final orders of removal. *See* Memo, INS, Pearson HQASY120/12/11 (Feb. 23, 2001), reprinted in 78 No. 9 Interpreter Releases 444, 455–64 (Mar. 5, 2001). *See also* 8 C.F.R. Part 1241 Subpart A (Post-hearing Detention and Removal) at § 1241.8(d).

Cases involving pending applications for relief or removal orders are difficult to assess in part because relevant information may not be readily obtainable from a central database. *See* ICE Law Enforcement Service Center (LESC) Training Manual available at http://www.scribd.com/doc/21968082/ICE-Law-Enforcement-Service-Center-LESC-Training-Manual (describing databases). Georgia law enforcement officers carrying out their duties may be unable to accurately assess immigration status in all but a relatively narrow category of situations where an individual possesses valid, unequivocal proof of status, such as

12

a "green card."  The fact that O.C.G.A. § 17-5-100(a)(2) defines "illegal alien" as someone "who is verified *by the federal government* to be present in the United States in violation of federal immigration law" does not alter this reality (emphasis added).  The statute grants Georgia police officers wide discretion to determine whether or not someone has been "verified" to be an "illegal alien."  Under § 17-5-100(c), police officers are "authorized to use *any* reasonable means available to determine the immigration status of the suspect (emphasis added)."  There is no requirement that Georgia police actually contact DHS for the verification.  The statute states only that a "reasonable means" might include "[c]ontacting an appropriate federal agency." *Id.*

Although officers must "receive[] verification [from the federal government] that [the] suspect is an illegal alien" before arresting the person on a civil immigration violation, nothing in the law specifies *how* this verification is supposed to occur.  The broad language sanctioning immigration investigations by "any reasonable means" suggests that officers could find "illegal alien" status to be "verified" based on nothing more than inferences from information contained in federal databases and/or federal documents.  As discussed above, immigration status is complicated and records do not specify illegal/legal status as such.

13

Even determinations of United States citizenship can be both legally and factually complex.  Birth in the United States straightforwardly confers United States citizenship.  *See* U.S. Const. Amend. XIV, § 1.  Some people born abroad, however, are also United States citizens by virtue of having acquired or derived it. These United States citizens may not possess a certificate of citizenship, U.S. passport, or other document as evidence of their status.

A foreign-born child automatically becomes a United States citizen by operation of law if a parent naturalizes before the child reaches the age of eighteen and certain other conditions are met.  *See* 8 U.S.C. § 1431(a).  A child born abroad to one or two United States citizens can also be a United States citizen if certain conditions are met.  *See* 8 U.S.C. §§ 1401, 1409 (setting out various conditions whereupon individuals may acquire U.S. citizenship at birth); *Miller v. Albright,* 523 U.S. 420, 429-30 (1998) (plurality opinion) (acknowledging that 8 U.S.C. § 1401(g) provides for citizenship at birth abroad to one U.S. citizen parent and one alien parent).  *Accord* 8 U.S.C. § 1431(b) (setting forth conditions whereupon adopted alien children acquire U.S. citizenship automatically).

Analyses of derivative and acquired citizenship claims are particularly complex because different laws apply in different situations.  *See Matter of*

14

*Rodriguez-Tejedor*, 23 I. & N. Dec. 153 (BIA 2001). Current law, contained in the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (Oct. 30, 2001), is not retroactive, making the relevant law a function of when a person was born. The factual determinations involved in citizenship determinations are equally difficult, often depending on facts relating to the person's parents (for example, dates of naturalization and dates of physical presence). As a result, neither Georgia police in the field nor immigration agents responding to phone calls are in a position to make timely and accurate determinations regarding United States citizenship.

### III. THE ENUMERATED IDENTIFICATION DOCUMENTS IN HB 87 SECTION 8 FAIL TO CORRESPOND TO LAWFUL IMMIGRATION STATUS AND THEREFORE DO NOT SIGNIFICANTLY LIMIT CIVIL IMMIGRATION ENFORCEMENT ACTIONS BY GEORGIA POLICE.

A safe-harbor provision of the Georgia statute, which enumerates five documents as presumptive indicators of lawful immigration status, fails to significantly limit civil immigration enforcement actions by state and local police. O.C.G.A. §§ 17-5-100(b)(1)-(5). The documents are: (1) a "secure and verifiable document" as defined in Section 19 of HB 87; (2) a valid Georgia driver's license; (3) a valid Georgia identification card; (4) a valid driver's license or identification

15

document issued from an entity requiring proof of legal presence; and (5) a valid international license if the holder is a nonresident. *Id*. These documents cannot serve as accurate proxies for citizenship or immigration status because people who are United States citizens and people who have lawful status may not possess one of the five types of documents. Despite §§ 17-5-100(b)(1)-(5), entire categories of United States citizens and people who have permission to remain in the United States will be at risk of interrogation and detention.

United States citizenship may be definitively established through a birth certificate, passport, certificate of naturalization, or a certificate of citizenship. But it is highly unlikely that a United States citizen will possess one of these documents during a routine stop by the authorities. United States citizens are not required to carry proof of citizenship or identification, and it is estimated that fewer than twenty-five percent possess a passport.[7] Native-born United States citizens who do not have passports are not in any federal immigration database. Moreover, some states do not require proof of lawful presence in the United States before issuing a driver's license or state identification card. For example, Washington and

---

[7] *See* U.S. Department of State Bureau of Consular Affairs, *Passport Statistics*, *available at* http://travel.state.gov/passport/ppi/stats/stats_890.html (last visited Jun. 10, 2011).

New Mexico issue driver's licenses and identification cards to individuals regardless of their citizenship or immigration status.[8]  As a result, United States citizen residents of Washington who are not carrying a passport will be unable to establish a presumption of lawful presence in the United States if they are stopped in Georgia because they will lack the requisite documents required under Section 8 of HB 87.   HB 87 will therefore subject United States citizens to undue interrogation and detention by law enforcement officers.

The same is true for noncitizens authorized to be present in the United States who do not possess any of the enumerated identification documents.   Many categories of noncitizens have some form of immigration status but do not possess a driver's license or state identification because of strict qualification requirements. Even those who qualify for a driver's license or identification may be erroneously denied because Department of Motor Vehicle staff misapplied the complex rules about who qualifies. *See Denial of Driver's Licenses to Many Immigrants Voided*, The New York Times, May 11, 2005, *available at* http://www.nytimes.com/2005/ 05/11/nyregion/11license.htmlhttp://www.nytimes.com/2005/05/11/nyregion/11lic

---

[8] Wash. Rev. Code 46.20.035(3) (allowing use of "other available documentation," on a discretionary basis, for issuance of driver's license); N.M. Stat. Ann. § 66-5-9(B) (1978); N.M. Code R. § 18.19.5.12(D) (allowing foreign national to obtain driver's license with federal tax identification number and valid foreign passport or Matrícula Consular card);

17

ense.html; *Lawful Immigrants Sue Massachusetts RMV for Wrongful Denial of Driver's Licenses*, December 15, 2006, *available at* http://www.aclum.org/news_12.15.06. Moreover, some people may have paperwork associated with their status that is written in technical language and is not readily understandable. Federal immigration regulations at 8 C.F.R. §§ 264.1(a)-(b) prescribe over twenty (20) different types of immigration registration forms or documents that do not necessarily include a photo or picture.

In sum, HB 87 incorrectly assumes that citizenship or immigration status is easily determined and readily ascertainable during every-day encounters with law enforcement. In reality, the complexities of immigration law, lack of a uniform meaning for "illegal alien," and incomplete access to information combine to make it difficult to accurately and timely assess immigration status. Moreover, the list of safe-harbor documents provided in Section 8 does little to limit the immigration investigations of police because many United States citizens and people with status do not possess these documents. HB 87 therefore subjects both United States citizens and lawfully present noncitizens to erroneous and intrusive interrogation and prolonged detention during routine law enforcement encounters.

RESPECTFULLY SUBMITTED,

/s/ Socheat Chea
Socheat Chea
*On behalf of Attorneys for* Amicus
Curiae *American Immigration Lawyers Association*


Rebecca Sharpless*
Florida Bar No. 0131024
Farrin Anello*
New York Bar No. 4403952
Immigration Clinic
University of Miami School of Law
1311 Miller Drive, E273
Coral Gables, FL 33146
(305) 284-3576
(305) 284-6092, clinic
(305) 284-6093, facsimile

*Counsel for Amicus Curiae*

**Pro hac vice* motions forthcoming


Socheat Chea
Georgia Bar No. 122212
Socheat Chea, P.C.
3500 Duluth Park Ln, Bldg. 300
Duluth, GA 30096
(770) 623-8880

19

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Local Rule LR 5.1 and 7.1D, undersigned counsel hereby certifies that this brief has been prepared with Times New Roman, 14 point font.

This 15th day of June, 2011.

<u>/s/ Socheat Chea</u>

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification to the following attorney for Defendants Deal, Olens, Reese, and Beatty, to whom a copy is being sent by Fed-Ex today:

> Devon Orland
> Office of State Attorney General
> 40 Capitol Square, S.W.
> Atlanta, GA 30334-1300
> dorland@law.ga.gov
> *Attorney for Defendants Deal, Olens, Reese and Beatty*

I hereby certify that a copy of the foregoing is being sent by Fed-Ex on this date to the following non-CM/ECF participant:

> Falecia Stewart
> Executive Director, Housing Authority of Fulton County
> HAFC Headquarters
> 4273 Wendell Drive
> Atlanta, GA 30336

This 15th day of June, 2011.

/s/ Socheat Chea

21