**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **GEORGIA LATINO ALLIANCE FOR HUMAN RIGHTS, et al.,** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **V.** | * | **1:11-CV-1804-TWT** |
| | * | |
| **NATHAN DEAL, Governor of the State of Georgia, et al.,** | * | |
| | * | |
| | * | |
| **Defendants.** | * | |

**DEFENDANTS DEAL, OLENS, REESE AND BEATTY'S
SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO
DISMISS[1]**

Come Now, Defendants, Deal, Olens, Reese and Beatty[2], through Counsel

and file this brief in support of their Motion to Dismiss.

Plaintiffs, a combination of organizations and individuals, filed this suit as a

facial challenge to HB87, entitled the "Illegal Immigration Reform and

---

[1] The basis for the dismissal of the instant complaint has been substantively briefed by all parties.  Defendants submit this brief to address whether the matter should be resolved on the current record or if Plaintiffs should be allowed to pursue discovery related to Section 8.  Defendants maintain that the decision of the Eleventh Circuit should end any further litigation of the matter and adopt all prior argument related to the constitutionality of Section 8.

[2] As the statutes relevant to the positions held by Defendants Reese  and Beatty are no longer a part of this action Defendants maintain that Governor Deal and Attorney General Olens should be the sole remaining Defendants.

Enforcement Act of 2011." (hereinafter HB87)(doc. 1, Ex. A).  Defendants move that this case be dismissed in its entirety.  Specifically, Plaintiffs brought a pre-enforcement challenge to key provisions of HB87.  The law was to come into effect on July 1, 2011 and the action was brought on June 2, 2011.

Plaintiffs' claims as initially brought were premised upon allegations that the statutes violated the Supremacy Clause to the United States Constitution, the Fourth Amendment, the right to travel, the Fourteenth Amendment, 42 U.S.C. § 1981 and the Georgia Constitution.[3]  Plaintiffs filed a Motion for Preliminary Injunction seeking to preliminarily enjoin enforcement of Sections 7, 8 and 19. (doc. 29).  Deal, Olens, Beatty and Reese ("State") filed a Motion to Dismiss the complaint in its entirety (doc. 47). Plaintiffs responded.  (R. 76).  The State filed a response to the Motion for Preliminary Injunction. (R. 70).  The Court entered an order on both of these motions and dismissed all claims except the challenges to § 7 and § 8 based upon the Supremacy Clause to the United States Constitution and enjoined the enforcement of these two provisions. (doc. 93). The State timely filed a Notice of Appeal.  (doc. 97).  After argument but prior to the decision from the Eleventh Circuit Court of Appeals, the United States Supreme Court issued a decision in *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492 (2012).  The

---

[3] Challengers withdrew all state law claims.

2

Eleventh Circuit Court of Appeals issued a decision finding that Challengers could file suit directly under the Supremacy Clause, reversing the decision of the District Court as to Section 8 but affirming the preliminary injunction as to Section 7. Specifically, as to Section 7 the Court determined that, "the end result of section 7 is to layer additional penalties atop federal law…." Thus, the Eleventh Circuit determined that "Plaintiffs have met their burden to show a likelihood of success on the claim that section 7 is preempted by federal law." The parties agree that based upon the Eleventh Circuit's ruling, that there has been a determination that Section 7 is facially unconstitutional under the Supremacy Clause absent a decision from a higher court altering the law in this Circuit.

In its analysis of Section 8, the Eleventh Circuit rejected, "the current preenforcement challenge" and noted that Section 8 was "less facially problematic than the Arizona law found to be constitutional by the United States Supreme Court. While noting the possibility that an unconstitutional application of statute may give rise to subsequent litigation, the Court refused to assume that the state would disregard the law based upon a preenforcement challenge. The Court concluded its analysis with similar language to that used in its findings for Section 7 albeit with a different conclusion. The Court held, "Plaintiffs cannot establish

that they are likely to succeed on the merits of their preemption argument in this preenforcement challenge to Section 8."

Plaintiffs suggest that they should be entitled to discovery to evaluate the scope and constitutionality for the enforcement of Section 8 as part of this preenforcement action. Specifically Plaintiffs indicated, "the question is whether there's going to be a statewide training or statewide guidance that would lead to any sort of widespread constitutional violations…." (hearing transcript). Essentially Plaintiffs seek discovery to engage in fact finding as to the actual enforcement and application of the law. As this action was brought preenforcement as a facial challenge its actual enforcement is irrelevant. Defendants move that this Court enter an order consistent with the holding of the Supreme Court of the United States and the Eleventh Circuit Court of Appeals and find that Section 7 violates the Supremacy Clause and therefore is preempted by federal law and that Section 8 is facially constitutional. Plaintiffs' contention that discovery is needed to assess the constitutionality of various actors' enforcement of Section 8 is without merit as this case was brought as a preenforcement facial challenge against Defendants who have no direct enforcement authority over the challenged provisions thus discovery as to the enforcement of the statute is clearly inappropriate.

Section 8 is codified as O.C.G.A. § 17-5-100 and provides:

(a) As used in this Code section, the term:

   (1) "Criminal violation" means a violation of state or federal criminal law but shall not include a violation of a county or municipal law, regulation, or ordinance.

   (2) "Illegal alien" means a person who is verified by the federal government to be present in the United States in violation of federal immigration law.

   (b) Except as provided in subsection (f) of this Code section, during any investigation of a criminal suspect by a peace officer, when such officer has probable cause to believe that a suspect has committed a criminal violation, the officer shall be authorized to seek to verify such suspect's immigration status when the suspect is unable to provide one of the following:

   (1) A secure and verifiable document as defined in Code Section 50-36-2;

   (2) A valid Georgia driver's license;

   (3) A valid Georgia identification card issued by the Department of Driver Services;

   (4) If the entity requires proof of legal presence in the United States before issuance, any valid driver's license from a state or district of the United States or any valid identification document issued by the United States federal government;

   (5) A document used in compliance with paragraph (2) of subsection (a) of   Code Section 40-5-21; or

   (6) Other information as to the suspect's identity that is sufficient to allow the peace officer to independently identify the suspect;

   (c) When attempting to determine the immigration status of a suspect pursuant to subsection (b) of this Code section, a peace officer shall be authorized to use any reasonable means available to determine the immigration status of the suspect, including:

   (1) Use of any authorized federal identification data base;

   (2) Identification methods authorized by federal law, including those authorized by 8 USCA § 1373(c), 8 USCA § 1644;

   (3) Use of electronic fingerprint readers or similar devices; or

   (4) Contacting an appropriate federal agency.

(d) A peace officer shall not consider race, color, or national origin in implementing the requirements of this Code section except to the extent permitted by the Constitutions of Georgia and of the United States.

(e) If during the course of the investigation into such suspect's identity, a peace officer receives verification that such suspect is an illegal alien, then such peace officer may take any action authorized by state and federal law, including, but not limited to, detaining such suspected illegal alien, securely transporting such suspect to any authorized federal or state detention facility, or notifying the United States Department of Homeland Security or successor agency. Nothing in this Code section shall be construed to hinder or prevent a peace officer or law enforcement agency from arresting or detaining any criminal suspect on other criminal charges.

(f) No person who in good faith contacts or has contact with a state or local peace officer or prosecuting attorney or member of the staff of a prosecuting attorney for the purpose of acting as a witness to a crime, to report criminal activity, or to seek assistance as a victim to a crime shall have his or her immigration status investigated based on such contact or based on information arising from such contact.

While Plaintiffs' complaint is riddled with anecdotal accounts of racial profiling and improper early enforcement of the Bill, as the effective date of the Bill had not occurred as of the date the Complaint was filed, Plaintiffs could have only pursued a facial challenge to the statute.

The "injury" in a pre-enforcement context is the well-founded fear that comes with the risk of subjecting oneself to prosecution for engaging in allegedly protected activity. *Babbitt v. UFW*, 442 U.S. 289, 298-99, 99 S. Ct. 2301, 2309, 60

L. Ed. 2d 895 (1979) see also *Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 393, 108 S. Ct. 636, 643, 98 L. Ed. 2d 782 (1988).

In contrast, an "as applied" challenge asserts that a statute cannot be constitutionality applied in particular circumstances, and thus necessarily requires a factual record for the Court to consider. *Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009).   Here the Plaintiffs have alleged that the law is unconstitutional in any circumstances and thus have made a facial challenge.[4] Plaintiffs attempt to engage in discovery to assess whether the statute is properly enforced and/or whether local law enforcement has received proper training.  Such an inquiry would be a post enforcement investigation of claims that have yet to arise and is not supported by the allegations in complaint which challenge the application of the statute in all circumstances.  This investigation could be due diligence prior to filing an as applied challenge but has no validity when examining the validity of a statute on its face.

The inherent risk accompanying preenforcement challenges - that the challenger is not the best litigant - has led the courts to deny facial challenges in most circumstances, carving out only a few narrow exceptions.  *Los Angeles Police Dep't v. United Reporting Publ'g Corp*, 528 U.S. 32, 39 (1999) (discussing the

---

[4] *See Georgia Carry.org, Inc. v. Georgia*, 687 F.3d 1244, 1255 fn 20 (11th Cir. 2012).

exceptions to the general rule disfavoring facial challenges and holding that a statute limiting access to arrestee information was not subject to a facial challenge).  Plaintiffs seek to have the court expand this preenforcement action by allowing for discovery and individualized inquiries into enforcement for a statute that has been determined to be facially constitutional.

"An as-applied challenge, by contrast, addresses whether 'a statute is constitutional on the facts of a particular case or to a particular party.'"  *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) *quoting* Black's Law Dictionary.  As Plaintiffs sought to invalidate portions of the statute and render it uniformly inoperative, they have clearly brought a facial challenge. (doc. 1, p. 180 "Prayer for relief" b and c).  As the facial validity of the statute has been determined, there is no merit to Plaintiff's request for discovery and this case should be dismissed.

Moreover, it should be noted that the only true remaining Defendants in this action are the Governor and Attorney General, sued in their official capacities.  As neither has enforcement authority for the relevant provision nor access to relevant discoverable enforcement plans of the multitude of potential "enforcers." Admittedly the Eleventh Circuit Court of Appeals found the Governor and Attorney to be proper parties for the enjoinment of the statute.  Nothing in the

8

Court's decision suggests that they are proper parties for engaging in discovery of the enforcement of the action or that they would somehow be responsible for ensuring that the Act was constitutionally implemented.

Instead, the Georgia Constitution provides for the "self-government of municipalities." Ga. Const. art. IX, § 2, ¶ 1, 2. Counties are authorized to provide police protection. *Id.* at ¶ 3. The county police are under the control of the county governing authority and have law enforcement powers, including the power to make arrests and execute and return criminal warrants in the county of appointment. O.C.G.A. § 36-8-5. Sheriffs are constitutional "county officers" who are "elected by the qualified voters of their respective counties" and who "have such qualifications, powers, and duties as provided by the general law." Ga. Const. art. IX, § 1, ¶ 3(a).

As independently elected officials, the local sheriffs have specific duties, including the enforcement of State laws. Sheriffs do not act under the direction of the Governor or the Attorney General. O.C.G.A. §§ 15-16-9, 15-16-10. Thus, it is the responsibility of local law enforcement to manage the enforcement of the provisions of the Statute and Governor Deal and Attorney General Olens in their official capacities cannot ensure that this or any other statute is enforced in a constitutional manner. If such were the case these Defendants could be party to

any action which challenges the constitutionality of the action of any law enforcement officer in the state.

## CONCLUSION

For the above and foregoing reasons, Plaintiffs complaint should be dismissed in its entirety.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

KATHLEEN PACIOUS        558555
Deputy Attorney General

/s/   Devon Orland
DEVON ORLAND              554301
Sr. Assistant Attorney General

Please Address All
Communications To:

Devon Orland
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
(404) 463-8850
(404) 651-5304

10

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

This the 20th  day of March, 2013.

/s/ Devon Orland
DEVON ORLAND                 554301
Sr. Assistant Attorney General


40 Capitol Square, S.W.
Atlanta, GA 30334-1300
(404) 463-8850 (Telephone)
(404) 651-5304 (Fax)
Email:  Dorland@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing

**BRIEF IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Andre Segura
Carolyn Hsu
Cecelia Wang
Elora Mukerjee
Karen Tumlin
Katherine Desormeau
Linton Joaquin
Melissa Keaney
Nora Preciado
Samuel Brooke
Sin Yen Ling
Tanya Broder
Winifred Kao
Andrew Turner
Azadeh Shahshahani
Chara Jackson
Charles Kuck
Daniel Wener
Danielle Conley
George Brian Spears
Jonathon Blazer
Kenneth Sugarman
Mary Bauer
Michelle Lapointe
Naomi Tsu
Omar Jadwat
Robert Keegan Federal, Jr.

This 20th day of March, 2013.


                                 <u>s/ Devon Orland</u>

State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: dorland@law.ga.gov

13