IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGIA LATINO ALLIANCE
FOR HUMAN RIGHTS, et al.,

   Plaintiffs,

    v.

NATHAN DEAL
Governor of the State of Georgia, in
his official capacity, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-1804-TWT

OPINION AND ORDER

This case is a facial challenge to the constitutionality of Georgia's Illegal Immigration Reform and Enforcement Act of 2011. Now, following the Supreme Court's decision in Arizona v. United States, a remand from the Eleventh Circuit, and a permanent injunction against section 7 of the act, the remaining Defendants move to dismiss the claim regarding section 8. The Plaintiffs seek discovery to pursue their facial challenge against section 8 of the act. Unfortunately for the Plaintiffs, their burden to establish the facial unconstitutionality of section 8 now appears to be insurmountable. Any further challenges to the Illegal Immigration Reform and Enforcement Act of 2011 must take the form of as-applied challenges.

I. Background

This action, filed on June 2, 2011, challenges the constitutionality of Georgia House Bill 87, the Illegal Immigration Reform and Enforcement Act of 2011 ("HB87" or the "Act"), enacted on April 14, 2011. The Plaintiffs initially argued that, on its face, HB87 violated the Supremacy Clause, the Fourth Amendment, the Fourteenth Amendment, and the constitutional right to travel. They sought injunctive relief. After briefing, the Court dismissed the Plaintiffs' challenges under the Supremacy Clause to all but two sections of the Act, and dismissed the Plaintiffs' challenges under the Fourth and Fourteenth Amendments. Specifically, the Court held that the Plaintiffs had not adequately pled facts to show that enforcement of section 8 of HB87 would be violative of the Fourth Amendment in all circumstances, that it would penalize the exercise of the right to travel, that HB87 facially restricts access to government service on the basis of national origin, or that the Act on its face deprives individuals of a property interest protected by the Fourteenth Amendment. See Georgia Latino Alliance for Human Rights v. Deal, 793 F. Supp. 2d 1317, 1336-1339 (N.D. Ga. 2011). The Court dismissed those claims and then granted the Plaintiffs' request to preliminarily enjoin sections 7 and 8 of the Act, ruling that the Plaintiffs were likely to succeed on their claims that those sections were preempted by federal law. The Defendants appealed.

The Court of Appeals for the Eleventh Circuit upheld the preliminary injunction of section 7. That section sought to create three new criminal violations: (1) transporting or moving an illegal alien; (2) concealing or harboring an illegal alien; and (3) inducing an illegal alien to enter the state of Georgia. See O.C.G.A. §§ 16-11-200 - 202. But, as the Court of Appeals noted, the federal Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, "provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens." Georgia Latino Alliance for Human Rights v. Governor of Georgia, 691 F.3d 1250, 1263 (11th Cir. 2012). It concluded that the Plaintiffs were likely to succeed on their claim that section 7 was preempted by federal law and affirmed the issuance of the preliminary injunction. Id. at 1267.

However, the Court of Appeals concluded that the Plaintiffs were not likely to succeed on their claim that section 8 was preempted by federal law. Section 8 provides that law enforcement officers in Georgia, having established probable cause that an individual has committed a crime, may investigate the citizenship status of that individual if the individual cannot produce adequate identification to prove citizenship. See O.C.G.A. § 17-5-100. In determining whether to investigate citizenship, police officers are expressly prohibited from considering "race, color, or national origin … except to the extent permitted by" the United States and Georgia

Constitutions. O.C.G.A. § 17-5-100(d). The Court of Appeals noted that, in <u>Arizona v. United States</u>, 132 S. Ct. 2492, 2510 (2011), the Supreme Court refused to rule that Arizona's analogue to section 8 was likely to be preempted by federal law. The Court of Appeals also noted that, in <u>Arizona</u>, a preenforcement challenge was considered premature although "the [Supreme] Court left open the possibility that the interpretation and application of Arizona's law could prove problematic in practice and refused to foreclose future challenges to the law." <u>Georgia Latino Alliance</u>, 691 F.3d at 1268 (quoting <u>Arizona</u>, 132 S. Ct. at 2510). The Eleventh Circuit was ultimately reluctant to conclude that section 8 of HB87 would "be construed in a way that creates a conflict with federal law." <u>Id.</u> (quoting <u>Arizona</u>, 132 S. Ct. at 2510).[1]

On remand, this Court permanently enjoined section 7, [Doc. 143], and dismissed Defendants Beatty (Commissioner of the Department of Community Affairs of the State of Georgia), Reese (Commissioner of the Department of Human Services

---

[1] The Court of Appeals followed Justice Kennedy in confusing and conflating the Supremacy Clause and Fourth Amendment claims. My analysis of section 8 under the Supremacy Clause was not based upon the Plaintiffs' claims of potential racial profiling and excessive detention. My analysis of section 8 was that federal law already sets forth the circumstances under which local law enforcement are authorized to aid in immigration enforcement under the supervision of the attorney general. See 8 U.S.C. § 1357(g). On its face, HB87 conflicts with that. In addition, my analysis of section 8 was that it will undermine federal law enforcement priorities and strategies by authorizing individual law enforcement jurisdictions within Georgia to implement their own immigration policies.

of the State of Georgia), and Stewart (Executive Director of the Housing Authority of Fulton County Georgia), in their official capacities. [Doc. 141].  The remaining Defendants, Governor Nathan Deal and Attorney General Samuel Olens, filed a supplemental motion to dismiss on March 20, 2013.  In their motion, the Defendants argue that the Eleventh Circuit's decision in this case precludes the Plaintiffs from establishing that section 8 is facially unconstitutional.  The Plaintiffs oppose the motion and argue they are entitled to discovery in furtherance of their facial challenge.

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."  Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading

stage, the plaintiff "receives the benefit of imagination").  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

## III.  Discussion

The Defendants argue that the Plaintiffs' facial challenge to section 8 should be dismissed for several reasons.  First, they state that the Plaintiffs cannot meet their burden in establishing that section 8 is facially invalid because the Eleventh Circuit ruling in this case indicates that the section could be applied in a constitutional manner.  The Defendants further argue that the Plaintiffs' request for discovery itself is an acknowledgment that the law could be enforced in a constitutional manner.  The Defendants also contend that the Plaintiffs' discovery request, which could involve 159 counties and 536 municipalities, is unprecedented and unsupported by any authority.  Finally, the Defendants argue that the Governor and the Attorney General are no longer the proper Defendants because they are not directly responsible for the Act's enforcement.

The Plaintiffs contend that their facial challenge is not limited to the preenforcement stage of the Act. Because their challenge was not mooted by the enforcement of HB87, they argue, they should be able to obtain discovery on the training of law enforcement in Georgia. They also argue that the Eleventh Circuit's decision was only in the context of a preliminary injunction and should not preclude their ability to pursue their facial challenge.

"To succeed on a facial challenge to a statute, a plaintiff must establish that no set of circumstances exists under which the statute would be valid." GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1255 (11th Cir. 2012) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).[2] "When a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." AFSCME Council 79 v. Scott, No. 12-12908, 2013 U.S. App. LEXIS 10786, at *18 (11th Cir. May 29, 2013).

---

[2] In a recent case, the Eleventh Circuit acknowledged that the Salerno decision, which provides the standard for prevailing on a facial challenge, has been subject to considerable criticism. However, the circuit court continued that, "[w]hile Salerno is often criticized, its holding remains binding precedent." GeorgiaCarry.Org, 687 F.3d at 1255 n.19. See also AFSCME Council 79 v. Scott, No. 12-12908, 2013 U.S. App. LEXIS 10786, at *19 (11th Cir. May 29, 2013) (quoting GeorgiaCarry.Org, 687 F.3d at 1255 n.19) ("[J]ust last year, a panel of this Court reiterated that the strict 'no set of circumstances' test is the proper standard for evaluating a facial challenge.").

Here, in the face of the Eleventh Circuit's conclusion that section 8 could be applied in a constitutional manner,[3] the Plaintiffs cannot satisfy this high burden.

In vacating the preliminary injunction against section 8, the Eleventh Circuit noted that the Supreme Court's decision in Arizona v. United States had approved of a state provision similar to section 8 and accordingly concluded that the "Plaintiffs are not likely to succeed on the claim that section 8 is preempted by federal law." Georgia Latino Alliance, 691 F.3d at 1267 (citing Arizona, 132 S. Ct. at 2510). While the Supreme Court's decision had recognized potential constitutional problems with Arizona's analogue to section 8, it "noted that the state's interpretation of its statute could remedy these concerns." Id. (quoting Arizona, 132 S. Ct. at 2508). The Eleventh Circuit continued:

> The Supreme Court's holding and explanation apply with full force to section 8, and we reject the current preenforcement challenge to its validity. First, we note that section 8 is less facially problematic than the provision at issue in Arizona. Unlike Arizona's section 2(B), which is a mandatory investigation provision, section 8 authorizes--but does not require--state officials to conduct an inquiry into immigration status whenever a detained individual cannot produce satisfactory identification. [] Furthermore, section 8 has the same three built-in limitations as the Arizona statute. See O.C.G.A. § 17-5-100(b) (providing that certain documentation is sufficient to establish immigration status); id. § 17-5-100(d) (prohibiting use of race, color, or national origin in implementing the provision); Ga. L. 2011, p. 794, § 1(c) (requiring implementation consistent with "federal laws governing immigration and civil rights"). Indeed, at oral argument, counsel for the

---

[3]But see footnote 1.

> state of Georgia emphasized that section 8 authorizes arrest and detention only to the extent permitted by federal law. This interpretation is consistent with the plain language of O.C.G.A. § 17-5-100(e). We are therefore reluctant to conclude that the state statute "will be construed in a way that creates a conflict with federal law." Arizona, 132 S. Ct. at 2510.

Id.  Implicit in this passage is the Eleventh Circuit's conclusion that section 8 of the Act *could* be implemented in a manner which does not conflict with federal law. Indeed, the court noted that "the nonmandatory nature of section 8 invites a host of other problems, namely racial profiling," but, because the statute itself prevents racial profiling, the court concluded that it would be "inappropriate … to assume that the state will disregard its own law," and noted that an "unconstitutional application of the statute could be challenged in later litigation." Id. at 1268 n.12 (citing Arizona, 132 S. Ct. at 2510).  Because the Eleventh Circuit concluded that there could be situations in which section 8 is applied constitutionally, albeit at the preliminary injunction stage, the Plaintiffs' facial challenge to section 8 must fail.

The Arizona District Court reached a similar conclusion after the Supreme Court's decision in Arizona.  Following the Supreme Court mandate, the district court in that case considered a new motion for a preliminary injunction against section 2(B) of the Arizona Statute, the analogue to section 8 in Georgia.  See Valle del Sol v. Whiting, No. CV 10-1061-PHX-SRB, 2012 U.S. Dist. LEXIS 172196, at *31 (D. Ariz. Sep. 5, 2012).  The plaintiffs argued that the Supreme Court's conclusion that

section 2(B) was not preempted on its face was made without the record that the plaintiffs had developed before the district court, which demonstrated that 2(B) would be enforced in an unconstitutional manner. Id. at *32. The court rejected the plaintiffs' argument and stated that the Supreme Court's decision barred further facial preenforcement challenges, and cited the Eleventh Circuit's opinion in this case to support its conclusion. Id. at *33 (citing Georgia Latino Alliance, 691 F.3d at 1250; United States v. Alabama, 691 F.3d 1269 (11th Cir. 2012)). The court stated that it:

> will not ignore the clear direction in the Arizona opinion that Subsection 2(B) cannot be challenged further on its face before the law takes effect. As the Supreme Court stated, Plaintiffs and the United States may be able to challenge the provision on other preemption and constitutional grounds "as interpreted and applied after it goes into effect." See Arizona, 132 S. Ct. at 2510. Plaintiffs have not shown that they are likely to succeed on their facial challenges to Subsection 2(B) because of the conclusions of the Supreme Court in Arizona.

Id. at *33-34. The court concluded that, "[w]ithout a set of as-applied facts, the Supreme Court has held that it would be speculative to decide as a matter of law that Subsection 2(B) will be enforced in an unconstitutional manner." Id. at *35. Although the court was considering a preliminary injunction request and the Plaintiffs here are seeking to defeat a motion to dismiss, the same reasoning applies. The Eleventh Circuit has instructed that section 8 could be applied in a constitutional manner in the same way that the Supreme Court instructed that Subsection 2(B) could be applied in a constitutional manner. Following that instruction, it is inappropriate

to rule on the section's validity prior to an as-applied challenge, and therefore the Plaintiffs cannot establish that section 8 is facially infirm.

The Plaintiffs suggest that the South Carolina district court's ruling concerning South Carolina's analogue to section 8 supports the Plaintiffs' request for discovery to further develop their facial challenge. However, the court in that case did not, as the Plaintiffs argue, endorse discovery pertaining to a facial challenge. The district court there removed a preliminary injunction it had issued prior to the Supreme Court's decision in Arizona. The court stated that, with respect to South Carolina's analogue to section 8, and in light of Arizona, "an injunction at this stage of the litigation is not appropriate… This litigation is only at the preliminary injunction stage, and this Court's decision to dissolve the injunction regarding these status-checking provisions does not foreclose a future *as-applied* challenge based upon *subsequent factual and legal developments*." United States v. South Carolina, 906 F. Supp. 2d 463, 471 (D.S.C. 2012) (emphasis supplied). The Plaintiffs rely on the next sentence in the opinion, which states that, "[i]n the course of this litigation, the parties will have the opportunity to conduct discovery regarding the actual practices and procedures associated with the implementation of [the South Carolina provision], and this Court can then address these issues with the benefit of a full record." Id. Reading the passage as a whole, the court's reference to "this litigation" does not appear to

reference solely the facial challenge but instead references the litigation challenging the statute in general. See id. Indeed, in a footnote following the passage the district court stated that "[a] legitimate line of inquiry in discovery would be whether law enforcement officers, in circumstances where the work associated with the original purpose of the stop or detention has been completed, terminate or prolong the detention while awaiting the completion of the immigration status inquiry." Id. at 471 n.4. This line of inquiry relates to an as-applied challenge, as it discusses specific facts associated with specific stops or detentions and specific officers. See Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009) ("An as-applied challenge … addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party.").

In the face of the Eleventh Circuit's opinion in this case and the Supreme Court's opinion in Arizona, the Plaintiffs face an insurmountable burden in establishing the facial invalidity of section 8. The opinions establish that there *could be* situations in which section 8 of HB87 is applied without conflicting with federal law.[4]  Georgia has not had the opportunity "to accord [section 8] a limiting construction to avoid constitutional questions." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (1987). Accordingly, the

---

[4] But see footnote 1.

Plaintiffs cannot meet their burden of showing that section 8 "could *never* be applied in a constitutional manner."  AFSCME Council 79, No. 12-12908, 2013 U.S. App. LEXIS 10786, at *18 (emphasis supplied).  However, the Court's determination that the Plaintiffs cannot establish the facial invalidity of section 8 "does not foreclose other preemption and constitutional challenges to the law as interpreted and applied after it goes into effect."  Arizona, 132 S. Ct. at 2510.

## IV.  Conclusion

For the reasons set forth above, the Defendants' Supplemental Motion to Dismiss [Doc. 144] is GRANTED.

SO ORDERED, this 18 day of July, 2013.

> /s/Thomas W. Thrash
> THOMAS W. THRASH, JR.
> United States District Judge